[Civ. No. 2688.   Third Appellate District.—April 16, 1924.]

## JOHN CONNERLY, Respondent, v. FRANK CORREIA et al., Appellants.

[1] NEGLIGENCE—AUTOMOBILE COLLISION—MAKING LEFT TURN—FAIL-
URE TO GIVE SIGNAL.—In this action for damages on account of
damage suffered by plaintiff as the result of an automobile col-
lision, the evidence showing that the driver of defendants' truck
sought to turn to the left across the highway without giving suit-
able visible signal of his intention so to do, as required by sec-
tion 20 of the Motor Vehicle Act, was sufficient to justify the
verdict in favor of plaintiff; and that verdict was conclusive on
appeal, notwithstanding, under the laws of nature and the laws of
motion, if the estimates of the witnesses as to the distance the
two machines were apart at the time plaintiff began his attempt
to pass the machine of defendants and as to their estimated
relative speed were correct, it was impossible for the collision to
have been caused by the driver of defendants' truck turning to
the leftward.

[2] ID.—EXCESSIVE DAMAGES—EVIDENCE.—In such action, considering
the extent of plaintiff's injuries and the pain and suffering he
had endured, the fact that he had been unable to work or earn
any money since the collision, and the amount of money he ex-
pended for medical attendance and for the repair of his car,
the damages awarded were not excessive as a matter of law; and
the fact that the jury awarded a larger sum than that allowed to
stand by the trial court did not show that the jury was actuated
by passion or prejudice.

[3] ID.—NEWLY-DISCOVERED EVIDENCE—NEW TRIAL—DISCRETION.—In
order to warrant the granting of a new trial upon the ground of
newly-discovered evidence, there must be a satisfactory showing
that such evidence could not have been obtained by the exercise
of reasonable diligence; and, in this action for damages on account
of damage suffered as the result of an automobile collision, as
the affidavits offered by defendants in support of their motion
for a new trial upon the ground of newly-discovered evidence

1. See 3 Cal. Jur. 950.

2. Excessiveness of verdicts in actions for personal injuries
other than death, notes, Ann. Cas. 1915D, 488; Ann. Cas. 1916C,
916; L. R. A. 1915F, 30. See, also, 8 Cal. Jur. 838; 8 R. C. L. 675.

3. See 20 R. C. L. 292.

presented nothing not submitted to the jury upon the trial already had, the trial court did not abuse its discretion in denying the motion.

---

(1) 4 C. J., p. 859, sec. 2836; 28 Cyc., p. 47.     (2) 4 C. J., p. 874, sec. 2849; 17 C. J., p. 1091, sec. 408.     (3) 29 Cyc., p. 995.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. H. Farrar and J. J. Dunne for Appellants.

Ernest Walling for Respondent.

PLUMMER, J.—This is an action by the plaintiff to recover damages from the defendants for and on account of personal injuries alleged to have been suffered by him in an automobile accident occurring on the fourteenth day of July, 1921. The cause was tried before a jury, the plaintiff had judgment and the defendants appeal.

It appears from the pleadings and transcript in this case that the plaintiff in this action on the day above named was driving a Ford automobile on the highway leading from Los Banos towards the town of Volta; that at the same time the defendants, by an employee and one of its partners, were driving a Ford truck belonging to the partnership on the same highway and in the same direction and, before the occurrence of the collision hereinafter referred to, were preceding the automobile driven by the plaintiff; that the driveway consisted of a concrete pavement approximately sixteen feet in width; that at a point near where the collision occurred there is a narrow lane leading off from the highway towards the left at an acute angle; that for a time just preceding the reaching of the intersection of the lane with the highway, the Ford truck was proceeding along the right-hand side of said highway and close to the right margin of the pavement. It also appears that there was a roadway of some five feet on either side of the concrete slab upon which an automobile might be driven. It appears that the driver of the truck intended to turn into the lane, above mentioned, and proceed towards his home and just before

reaching the intersection turned in that direction; that at about the same period of time the plaintiff, driving at a speed in excess of that maintained by the truck, was about to and was proceeding to pass the truck on its left-hand side; that while the automobile was so passing the truck, the collision in question occurred. It is alleged on the part of the plaintiff that the driver of the truck turned to the left for the purpose of entering the lane, heretofore mentioned, without extending his arm or giving any visible signal whatever of his intention so to do; and that by reason of such failure, the impact of the two cars took place. On the part of the defendants it is claimed that the injuries suffered by the plaintiff were due to his having driven his automobile against the truck in question and failed to turn sufficiently to the left in passing the truck to allow sufficient clearance between the two machines. The answer of the defendants denies all negligence but does not allege contributory negligence on the part of the plaintiff.

The testimony introduced on the part of the plaintiff is to the effect that immediately preceding the collision the automobile owned and driven by the defendants was keeping and proceeding along that part of the paved highway where it was legally entitled to be and proceeding in such a position as to permit of safe passage thereby of the Ford automobile being driven by the plaintiff; that the Ford automobile was being driven at a speed of about twenty-five miles per hour; that the speed of the Ford truck was variously estimated at from four to eight miles per hour. The testimony introduced on the part of the plaintiff is to the effect, also, that the plaintiff gave timely notice by the sounding of the horn with which his automobile was equipped a moment or so preceding his attempted passage of the Ford truck; that prior to the turning of the Ford truck to the leftward, no signal whatever was given of the intent of the driver thereof to turn to the leftward and proceed along the lane leading at an acute angle from the improved highway. On the part of the defendants it is insisted that no turn had been made to the leftward; that the driver of the truck was about to look around, according to his own testimony, to see if the turn to the left could be safely made; and that he put out his left hand as a signal of his intention to turn. The driver of the truck also tes-

tified that he did not know that the Ford automobile was coming from the rear and that he had made no turn before he was struck. The Ford automobile continued on for a distance of forty or fifty feet after the impact before it turned over on the side causing the alleged injuries to the plaintiff constituting the basis for this action. The driver of the Ford truck testified that the hub cap on the right front wheel of the automobile was marked, and that there were no marks on the wheel of the truck.

[1] On the part of the appellant it is insisted that from the estimated distances separating the cars at the instant of time the plaintiff began his attempt to pass the Ford truck and the estimated relative speed of the two cars, that it was absolutely impossible for the collision to have been caused by the driver of the defendants' truck turning to the leftward. The distance each car would run in a second of time is figured out and the conclusion is sought to be deduced therefrom that, owing to the estimated distances, the version given by the plaintiff and the witnesses is so directly contrary to mathematical calculations as to necessitate a reversal of the judgment of the trial court. Our attention is also called to the laws of nature, the laws of motion, the philosophy of Comte and the writings of Professor Tyndall. If the major and minor premise laid down by the appellants were positive facts and not mere estimates, then the mathematical calculations would have convincing weight, but when there is any uncertainty in the basis upon which the argument is founded or the premises from which the conclusion is to be deduced, we do not feel impressed by the so-called mathematical demonstration. Several pages of appellants' brief are also given to the exposition of the laws of nature and of how they should be applied in determining the merits of this cause. We have no quarrel with the laws of nature or the laws of motion. When understood and properly applied correct results undoubtedly may be reasonably expected, but, however this may be, we do not feel at liberty to disregard the provisions of the Motor Vehicle Act of the state of California. We do not mean to hold that an act of the legislature takes precedence of the laws of nature but we do find that it is more readily applicable in arriving at conclusions in automobile accident cases. The Motor Vehicle Act, by section 20 thereof (Stats. 1915, p. 406), requires

that a driver of such a vehicle on the public highway, before turning to the left, must give suitable visible signal by extending his hand and arm (not hand), which shall be visible from the rear, or by the use of an approved mechanical or electric device. There is abundant testimony in the transcript, if believed by the jury, to justify the conclusion that the driver of the Ford truck did not do anything of the kind, did not extend his arm and hand or use any means whatever to indicate that he was about to turn into the lane heretofore referred to and also that the driver of the Ford truck did turn his car to the leftward. Much stress is laid upon the testimony of the plaintiff and criticism directed at the expression "cramped his car into the left" when describing the action of the driver of the Ford truck. It is probable that if the plaintiff had possessed the skill, learning and ability displayed in appellants' brief, the exact manner in which it is claimed the defendant turned his car towards the left at the period of time when the Ford automobile was attempting to pass the same, a much more luminous description would have been given of the occurrence, but we think the language used was sufficiently definite and explicit to enable a jury of ordinary comprehension to understand what was meant. Such occurrences take place so quickly that it is not to be expected any one would be able to explain step by step the events as they take place or give anything more definite than a general statement of the events as they were impressed upon the mind by the rapidity of their occurrence. We may readily concede that no testimony founded upon impressions received and an almost instantaneously passing view of the events can approach anything like positive assurance, but this applies to the testimony of the witnesses for both the plaintiff and the defendants. The jury has the benefit of the personal presence of the witnesses and where the testimony is conflicting, if there is any reasonable testimony to support the verdict of the jury, this court is bound thereby. The testimony to which we have referred complies with the requirements of the rule just stated, and, hence, the alleged insufficient testimony to support the verdict requires no further consideration.

[2] It is next insisted that the damages awarded are excessive. The jury fixed the sum at $5,000, in addition to

the allowance for the damages to the truck and the moneys
expended by the plaintiff for medical attention. The court,
however, reduced the total damages allowed to the sum of
$3,500. It is still insisted that there is no basis for this
allowance. The testimony shows that the injuries were sus-
tained and received on the fourteenth day of July, 1921. The
verdict of the jury was returned on the fourteenth day of
June, 1922, thus a period of eleven months had expired after
the injury before the damages were fixed. The plaintiff had
a collar-bone broken; testified that he had been unable to
work or to earn any money since the date of the collision;
that it would cost at least the sum of five dollars per day
to obtain the kind and quality of labor that he theretofore
performed; that he had suffered much pain since the time
of the injury; that it was impossible for him to raise his arm
to his head; that if he tried to get his arm up it pained him;
that his left shoulder was "stove up"; that he could lift his
left arm to a certain height only by using his right hand
and arm in so doing. It further appears that the height
to which the plaintiff could lift his left arm was shown in
court, but the transcript in this respect is so indefinite that
we can arrive at no conclusions upon this point, as the
word "showing" is used to illustrate what occurred in court
and nothing further is made to appear. It further appears
in the testimony that the plaintiff at the time of the injury
was the owner of a small vineyard, which he has since sold,
and was living off the proceeds thereof. The testimony
shows that the medical attendance cost the plaintiff the sum
of $100, and that the repairs to his car were approximately
the sum of $175, which would leave $3,295 to cover the loss
of earnings for the period of eleven months, and such pain
and suffering and bodily injury as the plaintiff had endured
and received. The loss in earning capacity appears from
the testimony to have been reasonably worth the sum of be-
tween $1,400 and $1,500. This would leave in the neighbor-
hood of $1,700 to cover the physical suffering and injury.
We do not feel that such an award can be declared excessive
as a matter of law. Considerable attention is given by
appellant to the fact that the jury awarded a larger sum
than that allowed to stand by the trial court, and, therefore,
must have been actuated by passion or prejudice. We do
not think such a conclusion necessarily follows, as the aver-

age man would hesitate a long time before having a collarbone broken and the left arm injured so as to impair its usefulness and, also, be deprived of his earning capacity for almost one year. We say nothing as to future suffering and inconvenience, because the testimony stops in this particular with the date of the trial, although the inference can readily be drawn therefrom that it must continue for a considerable further period.

The appellants set forth forty-two alleged errors of law committed by the court during the course of the trial, thirty-one of which are based upon instructions refused or given by the court to the jury.

To follow these objections *seriatim* would entail needless labor and an unwarranted lengthening of this opinion. We have carefully read the instructions and do not find anything inconsistent therein and, taken as a whole, the instructions given by the court to the jury, we think, fairly and fully informed the jury as to the law applicable to this cause and that nothing was said or omitted which could be reasonably alleged as prejudicial to the appellants in this action. We agree with counsel for the respondent that a reading of the instructions shows that appellants' objections are exceedingly "hypercritical." This is true of nearly all the objections urged in this cause as one example here will sufficiently establish. The plaintiff alleged in his complaint that his automobile was wrecked and destroyed. The jury found that the automobile was damaged in the sum of $175. Appellants treated this subject as follows: "But there was no such issue; the real issue was whether the plaintiff's automobile was 'wrecked and destroyed'; and this very issue illustrates the lack of sound judgment by the jury in dealing with the cause, and their disregard of the actual evidence before them. The plaintiff asserted, not that his automobile was damaged, but that it was 'wrecked and destroyed.' " We do not know to what extent a Ford car may be damaged before the allegation contained in plaintiff's complaint may be properly used, but we do know that a jury of ordinary common sense can comprehend the language used in the complaint in this action and apply it to the testimony relating to the injury to the car with the same ability as though the word "damaged" had been used instead of "wrecked and destroyed"; and we also know that

the reformed procedure of this state does not require any such refinement, of language.

[3] The appellants, also, urge that the trial court erred in denying their motion for a new trial based upon affidavits of newly discovered evidence. We have read these affidavits and we agree with the trial court that there is not a sufficient showing therein upon which to grant a new trial. When carefully analyzed the alleged newly discovered evidence presents nothing not submitted to the jury upon the trial already had. At best, the testimony set out in the affidavits would constitute only additional corroborative testimony. In order to warrant a granting of a new trial on newly discovered evidence, there must be a satisfactory showing that such testimony could not have been obtained by the exercise of reasonable diligence, and in this particular, after reading the affidavits in question, we think the trial court properly exercised its discretion in denying the appellants' motion.

It is hereby ordered that the judgment of the trial court be and the same is hereby affirmed.

Finch, P. J., and Hart, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 12, 1924.

All the Justices concurred.