[Civ. No. 1048. Fourth Appellate District.—September 13, 1933.]

FRANK T. DE ARMAN et al., Respondents, v. M. M. CON-
NELLY et al., Appellants.

Harry W. Horton for Appellants.

Glassford & Smith and H. L. Welch for Respondents.

JENNINGS, J.—The defendants have prosecuted this appeal from a modified judgment in favor of plaintiffs rendered by the court after a trial of the cause was had before the court, without a jury. The appeal is also taken from an order of the court denying a motion of defendants for a new trial and directing that findings theretofore made be amended and the judgment entered in conformity with such findings be modified.

The principal contention advanced by appellants upon this appeal is that the evidence which is presented by the reporter's transcript shows that the respondent Frank T. De Arman was guilty of negligence, as a matter of law, which contributed to the occurrence of the collision between the automobile which was being operated by De Arman and a tow-car which was the property of appellant Connelly, and which, at the time of the collision, was being driven by appellant Mills, and that the damage to De Arman's automobile and the personal injuries suffered by respondents as a result of the collision were not, therefore, properly recoverable from appellants. Consideration of this primary contention necessitates a brief recital of the circumstances which surrounded the happening of the accident as these circumstances were developed by the evidence which is contained in the reporter's transcript of the trial.

At 6:30 P. M. of April 12, 1931, respondent Frank T. De Arman, accompanied by his wife, Gene Cash De Arman, was driving his Cadillac sedan in a southerly direction on the highway which extends due north and south between the towns of Imperial and El Centro in Imperial County. At the place where the collision occurred the highway consisted of a paved portion which was 20 feet wide and a dirt shoulder on each side of the pavement, each shoulder having a width of approximately 5 feet. The center of the highway was crowned up, leaving a borrow pit or ditch approximately 6 feet deep and 10 feet wide on each side of the highway. Respondent De Arman was driving his automobile at a speed of approximately 35 miles per hour, and as he approached the scene of the accident he observed an automobile which was in the bottom of the ditch on the east side of the highway. At this time the sun had not set and respondent De Arman testified that he was able to see down the highway for a distance in excess of a mile. The dimmer lights of the Cadillac were, however, illuminated. There was no south-bound intervening traffic between the Cadillac automobile and the place where the accident occurred. Except as will hereafter be noted no north-bound traffic was moving on the highway. At the scene of the accident a roadway extended from the west across the ditch and dirt shoulder on the west side of the highway and intersected the highway. This roadway did not extend to the east of the highway. The automobile which was in the bottom of the east ditch was approximately 50 feet north of the point where this roadway intersected the highway. Immediately to the west of the location of the automobile in the east ditch an automobile was parked on the dirt shoulder to the east of the highway. Two men stood in close proximity to the parked automobile. When the Cadillac automobile was approximately 175 feet north of the place where the accident occurred respondent De Arman observed a Ford coupe automobile approaching him from the south and following close to the rear of the Ford coupe a wrecking-car equipped with a crane which was used for the purpose of towing automobiles. The wrecking-car or tow-car, which was a Chevrolet truck, was the property of appellant Connelly and was being driven by appellant Mills. These two last-mentioned automobiles were proceeding on the east side of the paved

portion of the highway at slow speed. Respondent De Arman also observed a third automobile approaching from the south at a distance of between 150 and 550 feet. When De Arman had arrived at a point approximately 25 to 30 feet north of the tow-car the driver of this latter automobile suddenly changed the direction in which it was proceeding and caused it to cross the west side of the paved part of the highway, the tow-car then being pointed in a direction slightly north of west. In this position the tow-car at least partially blocked the west side of the highway. De Arman immediately applied the brakes of his automobile and turned slightly to the west in an effort to avoid colliding with the tow-car. His endeavor in this regard was unsuccessful and the front part of the Cadillac collided with the right side of the tow-car. The force of the collision caused the Cadillac automobile to leave the highway and it proceeded into the ditch on the west side of the highway, where it overturned.

The above facts which were developed by evidence produced during the trial amply warranted the court in finding that the driver of the tow-car, appellant Mills, was guilty of negligence in cutting across the west side of the pavement directly in the path of the approaching Cadillac automobile. As above indicated appellants contend, however, that respondent De Arman was himself guilty of contributory negligence as a matter of law. This contention is based largely on the testimony of De Arman to the effect that, when he arrived at a point which was approximately 175 feet north of the scene of the collision, he saw the wrecked car in the east ditch and observed another automobile on the highway immediately west of the wrecked automobile and two men standing on the highway at this point and had reason to believe and did believe that danger threatened him, but although he came to this realization he did not check the speed of his automobile but proceeded in the direction in which he was traveling at a speed of approximately 35 miles per hour. De Arman's failure to slow down in the face of threatening danger realized by him is said to constitute negligence *per se* which contributed to the happening of the collision.

The contention lacks merit. In the first place, the highly important element of realization by De Arman that

danger threatened him is based upon an answer by the witness De Arman to a question propounded to him, which answer was later properly stricken by the court. The question and answer are as follows: "Q. Did you see a possibility or semblance of trouble ahead of you as you reached a point 175 feet north of car number 3 (Ford coupe)? A. Yes sir, a bare possibility of it. The car in the ditch wasn't wrecked, that is it wasn't damaged. It seemed to have run off the road and was in the ditch apparently." An objection was then interposed to the question on the ground that it was indefinite and uncertain in that it could not be ascertained whether the "trouble ahead" meant trouble for the witness or for some other person. It was requested that the above-quoted answer be stricken and a more definite interrogation propounded. The motion was granted and the answer stricken. It is obvious that the objection to the question was well taken and that the court's action in striking the answer was correct.

Furthermore, it cannot, we think, be successfully urged that respondent F. T. De Arman should have realized that danger threatened him and that he should have checked the speed of his automobile. He was proceeding on his right-hand side of the highway and the path ahead of him was clear of any obstruction. He observed the automobiles approaching him at a low rate of speed on the east side of the highway. He was not required to anticipate that either the Ford coupe or the tow-car would suddenly change its course and proceed across the west side of the highway directly in his path. It is not contended that De Arman was operating his automobile at an unlawful rate of speed and we are entirely unable to discover that a speed of 35 miles per hour was, under the circumstances, excessive or that his failure to slow down contributed in the slightest degree to the happening of the accident.

It is also urged by appellants that the physical facts disclosed by the evidence conclusively indicate that the respondent F. T. De Arman was guilty of negligence, as a matter of law, which contributed to the occurrence of the collision and the ensuing personal injuries and property damage. In support of this contention counsel for appellants indulges in a somewhat involved mathematical calculation, the result of which is that the Cadillac automobile

operated by respondent F. T. De Arman must have been at least 50 feet from the point of collision when the front wheels of the tow-car had arrived at the center line of the highway. From this it is argued that respondents were not looking ahead or they must have seen the tow-car in ample time to have brought the Cadillac to a complete stop before the collision occurred, assuming that the speed at which the Cadillac was being operated was approximately 30 miles per hour as the testimony of respondents indicated. The cornerstone of this line of reasoning is the premise that the tow-car proceeded across the highway at a speed which did not exceed 6 miles per hour. It is said that it is undisputed that the tow-car while crossing the highway was being operated in compound low gear and that the maximum rate of speed which the car was capable of making in this gear was 6 miles per hour. It is true that the driver of the tow-car testified that he placed the tow-car in compound low gear before he started across the highway and that he kept it in this same gear during the crossing and that the maximum speed possible when the car was being operated in this gear was 6 miles per hour. It is also true that appellant Connelly testified that he examined the tow-car after the collision and found that it was frozen in compound low gear and that the maximum speed which the tow-car could make in compound low gear was approximately 6 miles per hour. It must be conceded that no witness testified that the tow-car was not being operated as it crossed the highway in compound low gear or that the maximum speed of the tow-car in this gear exceeded 6 miles per hour. To this extent the evidence mentioned may be said to be undisputed. However, the respondent F. T. De Arman testified that the tow-car suddenly shot out from behind the Ford coupe and proceeded very rapidly in front of the Cadillac when the latter automobile was approximately 25 feet distant from the tow-car. This testimony is at least inconsistent with the testimony of appellant Mills that he operated the tow-car across the highway at a speed of approximately 3 to 4 miles per hour and furnished ample justification for the court's finding that it was physically impossible for De Arman to have avoided the collision. It is further to be observed that the court found that appellant Mills abruptly turned the tow-car to the west across the

highway without giving any arm signal of his intention so to do and that this finding is amply supported by the evidence. The failure of appellant Mills to have given a proper signal before turning to his ' left was, under the circumstances here appearing, clearly in violation of sections 130 and 131 of the California Vehicle Act and may not be disregarded (*Connerly* v. *Correia,* 66 Cal. App. 570 [226 Pac. 841]).

Complaint is voiced that the sum of $6,000 awarded by the court as compensation for the injuries sustained by respondent Gene Cash De Arman is excessive. The court found that she suffered severe bruises about her right eye and temporal region, a 2-inch incised wound on her chin below the lower lip, which wound left a permanent scar approximately 1½ inches long and very noticeable; that both lips were lacerated on the inside and were cut through from the inside to and through the outer skin; that 4 upper front teeth were knocked completely out and another tooth so loosened as to require extraction; that several other teeth were permanently loosened; that her elbows were bruised and her right ankle and right knee were severely bruised; that she received a deep incised wound on the right leg 6 inches above the ankle which caused a permanent scar approximately 4 inches long on said leg; that she suffered an extreme nervous shock which has caused her to become permanently nervous to such an extent that she cannot drive or even ride in an automobile with comfort and which hinders her in the pursuit of her occupation as a schoolteacher; that she suffered great mental anguish and pain because of her injuries and was confined to her bed for a period of 6 weeks and for several months thereafter it was necessary for her to make use of crutches in moving about; that she suffered a fracture of both upper and lower jawbones and severe bruises and injuries to the left side of her body; that her facial appearance has been changed, disfigured, and marred by the injuries to her mouth and teeth causing her upper lip to protrude to a noticeable degree.

The finding respecting this respondent's injuries has ample evidentiary support and the bare recital of these numerous injuries and the effect produced by them upon her nervous system carries satisfactory refutation of the claim that the damages awarded are excessive. It is moreover to be ob-

served that the trial court was given an opportunity to reconsider its first award of $8,000 for this respondent's injuries on the motion of appellants for a new trial and that it reduced the award to $6,000. We find ourselves unable to declare that the last-mentioned amount is so plainly excessive as to warrant the conclusion that the award was the result of passion or prejudice on the part of the trier of facts (*May* v. *Farrell,* 94 Cal. App. 703 [271 Pac. 789] ; *Bennett* v. *Hardy,* 108 Cal. App. 473 [291 Pac. 903] ).

In connection with the court's finding respecting the injuries of respondent Gene Cash De Arman, it is objected that the court found that "the injuries to the right knee appear to be permanent". It is urged that this portion of the finding is entirely unsupported by the evidence. With this contention we cannot agree. The record contains evidence which supports the finding.

It is also urged that the court committed reversible error in signing amended findings and a modified judgment after the lapse of the 60-day period following the filing of a notice of intention by appellants to move for a new trial. The first judgment was entered on February 4, 1932. On February 13, 1932, appellants filed their notice of intention to move for a new trial. The motion for a new trial was heard on April 2, 1932, and on April 5, 1932, the court denied the motion and at the same time ordered that the original findings and conclusions of law be amended in certain particulars and especially that the amount of recovery be reduced from $10,389 to $7,889. On June 8, 1932, the court signed the amended findings and conclusions of law and a modified judgment ordering and decreeing that respondents recover from appellants the sum of $7,889. The court's action in directing amended findings and a modification of the judgment upon its denial of the motion for ·a new trial was taken in accordance with the provisions of section 662 of the Code of Civil Procedure. This section of the code contains no limitation as to the time when the court may actually sign amended findings or a modified judgment. It has been construed by the courts of review on a number of occasions and in no instance has its scope been limited in accordance with the contention of appellants (*Meda* v. *Lawton,* 214 Cal. 588 [7 Pac. (2d) 180] ; *Heron* v. *Bray,* 122 Cal. App. 79 [9 Pac. (2d) 513] ; *Holland* v.

*Superior Court,* 121 Cal. App. 523 [9 Pac. (2d) 531];
*Moore* v. *Levy,* 128 Cal. App. 687 [18 Pac. (2d) 362]).

■ Appellants advance the contention that the judgment from which this appeal is taken is for a lump sum for both respondents and that a separate judgment should have been rendered in favor of each respondent for the injuries sustained by such respondent. It is sufficient answer to this contention to say that this is of no concern to appellants, who are entitled to complain only of such matters as injuriously affect them without regard to errors of which others might complain (2 Cal. Jur. 840; *Fairchild* v. *Bay Point etc. R. R. Co.,* 22 Cal. App. 328 [134 Pac. 338]).

■ It is objected that the court's finding that the sum of $654 represents the reasonable amount for expenses necessarily incurred in caring for the injuries suffered by respondent Gene Cash De Arman is lacking in evidentiary support. Careful examination of the record impels us to the conclusion that this contention is not justified and may not be sustained.

The judgment and order from which this appeal has been taken are therefore affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 6, 1933.