[L. A. No. 16535. In Bank.—June 22, 1939.]

In the Matter of the Estate of VIOLA L. ALLSHOUSE, Deceased. SARAH DAVIS et al., Appellants, v. HARRY A. ALLSHOUSE, Jr., Respondent.

Eckman & Lindstrom, Ralph G. Lindstrom, Arthur W. Eckman and R. L. Moore for Appellants.

Voltaire Perkins, H. B. Jack Manard, Anderson & Anderson, Meserve, Mumper & Hughes and Roy L. Herndon for Respondent.

THE COURT.—In this proceeding for determination of heirship, the appellants, three brothers, a sister and a nephew, of Viola L. Allshouse, deceased, are her heirs. They have appealed from a decree which adjudges that respondent, the son by prior marriage of the predeceased husband of decedent, is also an heir, and is entitled by virtue of section 229 of the Probate Code to succeed to substantially all of decedent's estate.

The appeal presents solely a question of law as most of the major facts are covered by stipulation of the parties. The legal problem is to correctly classify the properties in the

estate in order to determine what portion or portions thereof are subject to the provisions of section 229, *supra*. That statute, so far as here pertinent, provides: ''If the decedent leaves no issue, and the estate or any portion thereof was *separate property* of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, such property goes in equal shares to the children of the deceased spouse. . . . '' The precise point to be decided is what, if any, portion of the property found by the trial court to have come to decedent from her husband by gift, devise, and bequest, was ''separate property'' of the previously deceased spouse, within the meaning of the statute.

The decedent, Viola L. Allshouse, and Harry A. Allshouse, Sr., were married in the year 1919. Both were then domiciled in the State of Missouri, and that domicile was retained during the entire period of the marriage. Mr. Allshouse died on March 1, 1931, and about two weeks thereafter the widow established a domicile in California. She spent her remaining years in this state, passing away on April 1, 1936, intestate and without issue.

The inventory of her estate showed the following assets, of a total appraised value of $58,481.41: (1) cash, $467.18; (2) United Corporation, 7 shares of common stock, $50.75; (3) American International Corporation, 13 shares, $146.25; (4) Parke, Davis & Co., 1111 shares of capital stock, $49,300.63; (5) Federal Savings & Loan Society of Kansas City, Missouri, 10 shares, $1,000; (6) household and personal effects, $1,-516.60; **(7)** Los Angeles real property, $6,000.

Except for the first three items, of a total appraised value of $664.18, respondent was, by the decree entered herein, adjudged entitled to receive all of the above property, items 4–7, together with all the dividends, rents, issues, and profits therefrom acquired since April 1, 1936.

Tracing the history of decedent's acquisition of items 4–7, attention is first directed to item 4, the $49,300.63 worth of stock which comprises the bulk of the estate, 1111 shares of Parke, Davis & Company. Mr. Allshouse was for many years the manager of that concern. Between 1907 and 1925, he acquired 450 shares of its common stock—120 shares prior to his marriage in 1919 to decedent and the other 330 thereafter, but in part the 330 shares were paid for with funds possessed prior to the marriage. On June 18, 1928, this

stock was "spread" five to one, so that the 450 shares became 2,250. On June 30th Mr. Allshouse prepared a will devising 500 shares to respondent, and directing that the remaining 1750 shares be held in trust for payment of income therefrom to decedent during her life and distribution to respondent at her death. However, on August 3, 1929, he transferred 1,000 of these shares to decedent by way of gift, with the result that only 1250 shares were in his estate at his death in March, 1931. Of the latter shares, 500 were distributed to respondent, 360 were sold to pay costs of administration, and 390 were held in the trust and distributed to respondent at its close. The 1,000 shares given to decedent were still held by her at her husband's death, and thereafter she purchased 100 additional shares upon the open market and also received an 11 share stock dividend, thus increasing her ownership to 1111 shares. At the time of her own death she no longer had the original certificates evidencing her ownership, because of a wrongful conversion of the stock from her and later recovery, but she held certificates for the same amount and class of stock, which represent the 1111 shares acquired in the manner above described.

Item number 5 represents 10 shares in Federal Savings and Loan Society of Kansas City, Missouri, valued at $1,000, which, so the evidence shows, were acquired by Mr. Allshouse in 1925, and transferred by him to decedent in February, 1929. He had previously made a similar stock gift to respondent. Whether or not he purchased the stock with funds possessed prior to his marriage to decedent is not revealed.

The household and personal effects appraised at $1516.60, item number 6, were devised to decedent by Mr. Allshouse, and distributed to her in the proceedings had in Missouri for the probate of his will.

The last item, number 7, Los Angeles real property valued at $6,000, came to decedent in the following manner: Mr. Allshouse purchased a parcel of real property located in Jackson County, Missouri, in September, 1919, which was about three months after he married decedent. The evidence intimates that the purchase price was paid with funds possessed by him prior to the marriage, but this is not clearly established. Title was taken in the name of the spouses as tenants by the entirety. In May, 1929, this Missouri prop-

erty was exchanged for California real estate taken in joint tenancy. In August, 1929, Mr. Allshouse delivered a quit-claim deed of his interest in the joint tenancy to decedent, thus placing full title and ownership of the land in her.

It is practically conceded that all of these assets, items 4–7, had their origin in property which came to decedent from her husband by gift, devise, or bequest. While there is some suggestion that in 1928 and 1929, Mr. Allshouse may have intended, by the preparation of his will and by transfers to both respondent and decedent, to effect an equal division of his property between the two in consideration of an agreement on the part of decedent not to contest the will, that such was the case is not proved by the evidence. On the contrary, the fact is stipulated that the transfer to decedent of the main item of value, the Parke Davis stock, was a gift; so far as is shown the other transfers too were made without consideration. That was the conclusion of the trial court, and its findings have sufficient support in the record.

The only question therefore is whether the trial court was correct in further concluding that this property so given, devised, and bequeathed to decedent by her husband was his "separate property" as that term is used in the California statute of succession. (Sec. 229, *supra*.)

Had the property been acquired in California, it would have fallen into the following three divisions: First, personal property owned by the husband prior to his marriage to decedent, or acquired thereafter with assets which he possessed prior to said marriage, or by gift, devise, descent, or bequest. This would have been the husband's separate property (Civ. Code, sec. 163), and the portion of decedent's estate traceable thereto would be distributable to respondent (sec. 229, *supra*.) Second: All other personal property accumulated by the husband during the period of the marriage. This would have been community property (Civ. Code, sec. 164), and the portion of decedent's estate traceable thereto would also be distributable to respondent (Probate Code, sec. 228). Third: Real property held by the spouses in joint tenancy, with later quitclaim deed from husband to wife. Classification and distribution of this item would depend upon the facts which attended the creation of the joint tenancy.

The above classifications, however, are not here controlling because all of the property was in fact acquired by the spouses

while domiciled in Missouri, which is not a community property state. That jurisdiction adheres to the common law. Property there accumulated during marriage, which would in California be community, is denominated the sole property of the husband, subject only to the wife's right of dower. This is an ownership which differs in its incidents from either community property, or separate property distinguished from community, as those terms are employed in a community property jurisdiction, although it partakes more nearly of the nature of separate property than of community.

Respondent urges that in order to give effect to the California statutes of succession the Missouri holding of the husband in Missouri must be reclassified under a community property classification, and that it should be denominated separate property. Appellants, on the other hand, urge that the property classifications of the two jurisdictions are irreconcilable, and inasmuch as sections 228 and 229 of the Probate Code do not provide for succession to property originating in transfers to a wife by gift, devise, and bequest from property held by her husband in common law ownership sole, those statutes may not be relied upon by respondent in support of his asserted heirship. It is urged that the source of decedent's estate should not be traced beyond the borders of this jurisdiction, but that the property should be distributed according to the classification which it acquired when decedent became a resident of California. That is to say, decedent was unmarried, a widow possessed of a separate estate, at the time she established her California domicile. All of the property which had originated in transfers to her from her husband had passed into her sole ownership. Separate property (other than that referred to in section 229) of a decedent who leaves neither issue, spouse, nor parent, passes pursuant to section 225 of the Probate Code to the decedent's brothers, sisters, and descendants of deceased brothers and sisters by right of representation. Under this classification appellants would inherit, to the exclusion of respondent.

It is our view that the property classifications of the two jurisdictions are only partially irreconcilable, and that it is not erroneous, for purposes of succession, to trace the origin of an estate into a foreign jurisdiction and to there apply a California classification, provided the foreign ownership possessed substantially the incidents of the California

property holding under which it is to be classified. But such a reclassification is clearly wrong if the effect of imposing the community property ownership upon the foreign or common law holding would be to vary or defeat rights incident to that holding in a case where the property itself never left the foreign jurisdiction, and its owner was never domiciled in the community property state. ■ Furthermore, in considering which classifications are common to both jurisdictions, and which are irreconcilable, the title of the ownership should not be determinative, but the incidents thereof, the essential rights secured, and the persons in whom they vest. So far as is possible these rights should be protected in working out the solution of problems concerning the status of property touched by the laws of both jurisdictions. (McKay, Community Property, sec. 646, p. 438; 31 C. J., sec. 1080, p. 15.)

With these preliminary observations, we may proceed to determine the proper classification of the three above-mentioned divisions of property.

■ First. Personal property owned by the husband prior to his marriage to decedent, or acquired thereafter with assets which he possessed prior to said marriage, or by gift, devise, descent, or bequest. This was clearly separate or sole property of the husband in the simplest sense of that term, and to so classify it does no violence to either Missouri or California property laws, or to essential rights of the parties. Although some of the incidents of this ownership in the common law jurisdiction may have differed from those which would have obtained in the community property state, the variance is not substantial so far as the right of succession is concerned. The ownership was in essence that of the very type of property which it is the intent and purpose of section 229 to return to the husband's family upon death of the wife intestate and without issue.

Respondent should therefore succeed to that portion of decedent's estate which is traceable to property within this first classification. The present record does not afford a sufficient basis for fixing the extent of this proportion. The evidence indicates that the husband was possessed of considerable wealth when he married decedent, but his earnings at that time, and for several succeeding years, were also generous. As manager of Parke, Davis & Company he received a monthly salary of from $1100 to $1200, and even after an

illness forced him to retire, he received a life pension of $150 a month. It is impossible to estimate with any degree of precision what part of his transfers to decedent represented his pre-marital assets, including the rents, issues, and profits thereof, and what part represented accumulations resulting from his efforts during the period of the marriage. Upon a retrial of the cause proof may be directed to this issue.

The second division covers all other personal property acquired by the husband during the period of the marriage. This property, which would in California have been community, was held in Missouri by the husband in sole ownership, subject only to the wife's dower right. Such ownership, as heretofore mentioned, differs in substantial aspects from that of either community or separate property as those terms are employed in a community property jurisdiction. It differs from community property in that it vests a greater right in the husband. It differs from the husband's separate property in that it includes the wife's right of dower, which although inchoate is exceedingly valuable. (*Chrisman* v. *Linderman,* 202 Mo. 605 [100 S. W. 1090, 119 Am. St. Rep. 822, 10 L. R. A. (N. S.) 1205].) It therefore cannot properly be reclassified as either by the new jurisdiction while its situs and the domicile of its owner remain in the old.

Had the husband brought the property to this state, or had he become domiciled here, the rule would be different, for it is well settled that foreign property, when subjected to the laws of a community property jurisdiction, may be reclassified thereunder. (*Estate of Thornton,* 1 Cal. (2d) 1 [33 Pac. (2d) 1, 92 A. L. R. 1343]; *Estate of Warner,* 167 Cal. 686 [140 Pac. 583]; *Estate of Arms,* 186 Cal. 554 [199 Pac. 1053]; 31 C. J., sec. 1083, p. 16; *Shea* v. *Commissioner of Internal Revenue,* 81 Fed. (2d) 937.) But the fact that the present case concerns a situation where both owner and property were at all times in Missouri makes it clearly distinguishable from those cases which treat of changes of property classification created by a change of marital domicile, or change of situs of property, from a common law to a community property jurisdiction. It is only where such changes have occurred, and the husband has brought marital assets held by him in common law sole ownership into the community property jurisdiction, thus subjecting them to its laws

and classifications, that they have been held subject to re-classification as his separate property. Such reclassification finds its justification in the fact that community property law has only the two classes of ownership, and although the conversion into separate property creates an interference with the wife's dower right, it does not cause the disturbance of vested rights which would result from a conversion of the property into community.

But the facts of the present case afford no basis for application of the rule. The husband stayed in Missouri and there made provision for his wife and for respondent in contemplation of the operation of the property laws of that jurisdiction. There was no change of marital domicile; no change of situs of the property. The assets were still in Missouri at the time of the husband's death, and they there passed into the ownership of the widow. The widow's act in later establishing a domicile in this state, subjecting her property to its laws, should not have the retroactive effect of a prior act of the husband which would have changed the nature of his own ownership. In short, to reclassify the husband's Missouri holding would be for this state to reach beyond its borders and impose its substantially different classification upon both a former owner and a former ownership which obtained in a foreign jurisdiction. This may not be done.

Respondent, therefore, is not entitled by virtue of section 229, *supra*, to distribution of the division of property here under discussion. And as there is no California statute of succession which provides that the estate of a widow which originated in transfers to her of property held by her previously deceased husband in common law sole ownership shall revert to the husband's line, an estate derived from such source and brought into California by the widow, who here died intestate and without issue, is her separate property, having for purposes of application of the laws of succession the same status as the separate property of one who has never married. It follows that the portion of decedent's estate which comes within this classification is distributable under section 225 of the Probate Code.

Third and last is the matter of determining whether the California real estate was given, devised, or bequeathed to decedent by her husband from his "separate property". The history of this real estate has been hereinbefore set forth.

It was received by decedent and her husband as joint tenants (the husband later quitclaiming his interest to decedent) in exchange for Missouri real property, which they held as tenants by the entirety. The latter ownership bears substantial similarity to a California joint tenancy with right of survivorship. (*United States* v. *Jacobs*, 306 U. S. 363 [59 Sup. Ct. 551, 83 L. Ed. 763]; *Otto F. Stifels, etc.,* v. *Saxy*, 273 Mo. 159 [201 S. W. 67, L. R. A. 1918C, 1009]; *Ashbaugh* v. *Ashbaugh*, 273 Mo. 353 [201 S. W. 72].) It thus appears that decedent's joint tenancy interest was taken by way of purchase and not of donation. That is to say, in consideration of relinquishment of her Missouri interest as tenant by the entirety, she received an interest as joint tenant in the California property, and at the same time the husband did likewise. Decedent's California joint tenancy interest was her separate property; the husband's like interest was his separate estate, and when he conveyed it to decedent by quitclaim deed, it was a gift to her of his separate property. It follows that the ownership which was vested in decedent at the time of her death is, as to an undivided one-half interest, traceable to a gift from her predeceased spouse of his separate property, to which respondent is entitled to succeed. The other undivided one-half interest came to decedent from her own separate property, and is distributable under section 225, *supra.*

In making this pronouncement we are not unmindful of the fact that the Missouri estate by the entirety was purchased by the husband with funds which he possessed either prior or subsequent to his marriage to decedent, and that where a tenancy by the entirety is so created, the presumption under Missouri law is that the husband has made a gift to the wife of her joint interest in the whole. (*Alexander* v. *Alexander*, (Mo. App.) 44 S. W. (2d) 872.) However, it would in our opinion be erroneous, in tracing the California holding for purposes of succession, to look beyond its origin in the tenancy by the entirety in the common law jurisdiction in order to find the source of the latter tenancy. This is so because of the differing property laws and classifications of the two jurisdictions, and the care which should be exercised to avoid any unnecessary invasion of vested rights. Therefore even if it can be said that decedent's interest in the Missouri real property in fact originated in a gift to her by

the husband of his separate property, the creation of the tenancy by the entirety followed by transmutation into a California joint tenancy, must be held to have broken the chain of the gift so far as application of the statutes of succession of the community property jurisdiction is concerned.

The decree is reversed.

Edmonds, J., did not participate in the consideration of or decision in this cause.

Rehearing denied.