[L. A. No. 17928.   In Bank.   Feb. 11, 1943.]

Estate of ELLA WALLACE PERKINS, Deceased.   LILLIAN MIDDLEBROOK, as Administratrix, etc., Appellant, v. CLIFFORD L. PERKINS, Respondent.

George Appell and Harry A. Mock for Appellant.

C. H. Hartke and Freeman R. Brant for Respondent.

EDMONDS, J.—The probate court overruled the respondent's objections to a petition for distribution of the estate of Ella Wallace Perkins and entered judgment that he is not entitled to any part of her estate. Thereafter, on the respondent's motion for a new trial, it entered another judgment which ordered distribution of all of the decedent's estate, except $4,313, to him. This judgment followed the terms of "modified findings of fact" and "modified conclusions of law." The case is here upon a notice of appeal by "Lillian Middlebrook, administratrix of the estate of" Mrs. Perkins, reciting that she appeals from the modified judgment, except that portion of it which orders distribution of the $4,313 to herself and her two sisters, and "from that certain motion for new trial granted in said estate." From this notice it appears that the appeal is directed to a minute order made by the probate court following the hearing of the respondent's motion.

The question for decision concerns the character of the property left by Mrs. Perkins. The respondent claims all of her estate as separate property of her deceased husband which she acquired by gift from him. By its second judgment the probate court sustained the respondent's contention as to all of her property except a portion valued at $4,313, which had come to her by bequest.

Ella Wallace Perkins died intestate in this state leaving three sisters, Lillian Middlebrook, Rose Dunlap Franklin, and Jessie W. Chapman, as her sole survivors. Forty-two

years before, she had married Wallace T. Perkins and, prior to his death in 1931, they resided in the State of New York. There were no children of the marriage. Clifford L. Perkins, the respondent, is the son of Wallace T. Perkins by a prior marriage.

Mr. Perkins had remarried in 1897. He was then in the banking business in Denver. In 1904, he and his wife removed to New York, where he became an executive officer of one of the large banks there. The record includes no evidence of any property he had either when he married Ella W. Perkins or when they became residents of New York. But the testimony shows that after he went there as a successful banker he bought life insurance and also stock in a number of corporations. The certificates representing this stock were either issued in his name or in the name of his wife. As his secretary expressed it: "When Mr. Perkins acquired his own holdings, he would either purchase some in smaller amounts for Ella, or he would ask for a transfer or division of the amount that he bought, some in his name and a smaller amount in hers."

It appears that during this time the salary of Mr. Perkins was $40,000 per year and that his income from dividends and investments amounted to as much more. His salary checks and the checks representing his income from other sources were deposited in a bank account from which he paid both his living expenses and for the securities which he bought from time to time. He procured insurance of $90,000 upon his life. The policies representing this insurance named his wife as the beneficiary of $30,000, his son as the beneficiary of the same amount and a friend as the beneficiary of the remainder. Of this insurance, $10,000 was obtained under a group policy issued to the bank of which Mr. Perkins was an officer. One-half of the premiums on the group policy were paid by the bank; all of the other premiums were paid by Mr. Perkins from his income.

Shortly after the death of her husband, Mrs. Perkins came to California bringing with her about $19,000 in cash and some stock and bonds. There is evidence to the effect that while a resident of Los Angeles she made a number of investments. She had inherited $765.01 in 1918, and in 1933 she received a legacy of $3,548.15.

Following the death of Mrs. Perkins, Lillian Middlebrook was named as administratrix of her estate. In due time

the administratrix filed her first and final account, together with a petition for distribution of the estate to herself and her two sisters. The respondent filed written objections to the petition for distribution, claiming the entire estate under section 229 of the Probate Code as the separate property of Mrs. Perkins' predeceased spouse. Upon a hearing the probate court ruled against the respondent and decreed distribution to the three sisters of the decedent. No appeal was taken from this decree and the administratrix distributed the estate in accordance with its terms and procured her discharge.

Within the statutory time therefor, the respondent moved the court to grant a new trial. Upon the submission of this motion, the court filed "modified findings of fact and conclusions of law" reciting that the entire estate of Ella W. Perkins, except the sum of $4,313, was her separate property acquired by gift from Wallace T. Perkins. As a conclusion of law the court found that the respondent is entitled to all of the estate except that amount. A "modified judgment" in accordance with this decision was thereupon entered.

The appellant presents several points as grounds for reversal of the order granting a new trial and of the judgment. First, she contends, since the nature of the proceedings before the probate court was to determine the heirship of the respondent, the order should have been limited to that issue. A second point is that an appeal is the only remedy for one dissatisfied with a decree of distribution, and that a motion for a new trial after such a decree is unauthorized and improper. Her third contention is that, assuming the motion for a new trial was proper, the failure of the court to comply with the requirement of section 657 of the Code of Civil Procedure that the order granting a new trial upon the ground of insufficiency of the evidence must so specify in writing, is ground for reversal of the judgment. Finally, the appellant urges that the money received by Ella W. Perkins as the proceeds of insurance upon the life of her husband was not a gift to her within the meaning of section 229 of the Probate Code. In this connection she asserts that the removal of Mrs. Perkins to California did not change the legal character of the money which was paid to her in New York.

The respondent takes the position that an administratrix is not a party aggrieved by the judgment, hence the present

appeal should be dismissed. Upon the merits, he argues that the court acted entirely within its powers in granting the motion for a new trial and modifying its findings and judgment to accord with the evidence and the law governing the rights of the parties.

▇ Considering first the respondent's contention that the appeal should be dismissed, the record shows that it was taken by "Lillian Middlebrook, administratrix of the estate of" Mrs. Perkins. Although it is a fundamental principle that an administratrix may not appeal from a decree of distribution, this court, looking to the interests of the parties to litigation as of primary importance, has very liberally construed such a notice as one in which the designation of administratrix may be considered as *descriptio personae*. (*Estate of Strong*, 10 Cal.2d 389 [74 P.2d 231].) Notwithstanding the fact that in other papers presented by the appellant in connection with the present appeal it is stated that she is appealing "as said administratrix," the rule of the Strong case will be applied in the interests of justice.

▇ Turning to the points urged by the appellant, the statement that the purpose of the proceeding in the probate court was to determine the heirship of the respondent is incorrect. In his objections to the petition for distribution, he alleged the facts regarding his parentage and "that the entire estate of . . . Ella Wallace Perkins was the separate property of . . . Wallace T. Perkins . . . and came to . . . [her] by gift, descent or bequest from . . . [him]." Answering these objections the administratrix admitted the relationship of the respondent, but she specifically denied that the property owned by Mrs. Perkins at the time of her death was the separate property of Mr. Perkins, or that it came to his wife by gift, descent or bequest. The issues, therefore, presented for determination by these allegations concern only the legal character of the property owned by Mrs. Perkins at the time of her death.

▇ The point raised concerning the motion for a new trial requires a construction of section 1231 of the Probate Code, which reads: "A motion for a new trial in probate proceedings can be made only in cases of contests of wills, either before or after probate, in proceedings to determine heirship and interests in estates, and in those cases where the issues of fact, of which a new trial is sought, were of such character as to entitle the parties to have them tried

by a jury, whether or not they were so tried." Section 1020 of the same code provides that any person interested in the estate may resist an application for distribution. In construing the predecessor sections of sections 1231 and 1020 (Code Civ. Proc., §§ 1714, 1665, 1668) this court held that the test to be applied in determining whether the motion will lie in a particular probate proceeding is whether the law expressly authorizes an issue of fact to be framed in such a proceeding. It has been held that a party to a probate proceeding is entitled to a trial by jury when there is statutory authority for the formation of issues of fact upon the question to be determined. (*Carter* v. *Waste,* 159 Cal. 23 [112 P. 727]; *Estate of Baird,* 173 Cal. 617 [160 P. 1078]; *O'Brien* v. *Nelson,* 164 Cal. 573 [129 P. 985]; *Estate of Sutro,* 152 Cal. 249 [92 P. 486, 1027]; and *Estate of Wickersham,* 138 Cal. 355 [70 P. 1076, 71 P. 437].) In deciding these cases, the court found the necessary statutory authority in the language of section 1668 of the Code of Civil Procedure, reading: "At the time fixed for the hearing . . . any person interested in the estate may appear and contest the petition by filing written objections thereto." That section has since been repealed, but the Probate Code, now in effect, makes provision for an application to distribute the estate of a decedent, which is to be heard upon notice. "Any person interested in the estate or any coexecutor or coadministrator may resist the application." (§ 1020, Prob. Code.) Although this language is not as definite as that which was used in section 1668 of the Code of Civil Procedure, effective resistance to an application for final distribution requires written objections, and, at least where issues of fact are formed in that way, as they were in the present case, any party may demand a jury trial and, after verdict and judgment, make a motion for a new trial.

The appellant's contention that the trial court committed reversible error by not making a written order specifying the insufficiency of the evidence as a ground for its decision upon the motion for a new trial has no factual basis to support it. This statutory requirement becomes important only if the motion is granted. When, upon such a motion, the court follows the procedure authorized by section 662 of the Code of Civil Procedure, and either changes the findings or modifies the judgment without reopening the case for further proceedings and the taking of additional

evidence, no new trial is allowed. (*Spier* v. *Lang*, 4 Cal.2d 711, 714 [53 P.2d 138]; *Wyman* v. *Monolith Portland Cement Co.*, 3 Cal.App.2d 540 [39 P.2d 510]; *De Arman* v. *Connelly*, 134 Cal.App. 173 [25 P.2d 24]; *Moore* v. *Levy*, 128 Cal.App. 687, 694 [18 P.2d 362].)

But, it may be argued, the form of the minute order made by the court following the hearing of the respondent's motion for a new trial compels a contrary conclusion. This order recites that it is granted insofar as certain findings of fact and conclusions of law are concerned; that these findings and conclusions of law and the judgment are modified and changed to provide that the entire distributable estate, less the sum of $4,313.16, be distributed to the respondent, and that otherwise the motion for new trial is denied. Nevertheless, the action of the court was to deny the motion. A similar situation was presented in *Bureau of Welfare* v. *Drapeau*, 21 Cal.App.2d 138 [68 P.2d 998], where it was held that an order in substantially the same terms as the one now before the court was, in effect, a ruling denying the motion and granting alternative relief. The same construction has been placed upon other orders in this form. (*Roraback* v. *Roraback*, 38 Cal.App.2d 592 [101 P.2d 772]; *Garcia* v. *Bechtol*, 134 Cal.App. 615 [25 P. 2d 987].)

The merits of the controversy between the parties turn upon the question as to whether sections 228 and 229 of the Probate Code apply to property acquired in a common-law property state by one who was domiciled in that state. At the time of Mrs. Perkins' death, these sections read as follows: "If the decedent leaves neither spouse nor issue, and the estate, or any portion thereof was community property of the decedent and a previously deceased spouse . . . such property goes in equal shares to the children of the deceased spouse and their descendants by right of representation. . . . " (§ 228.) "If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest . . . such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation. . . . " (§ 229.)

Mrs. Perkins concededly was domiciled in California at the date of her death. Her estate, consisting entirely of

personalty, consequently was subject to the laws of succession of this state. ▇ Since the right of inheritance is not an inherent or natural right but one which exists only by statutory authority, the law of succession is entirely within the control of the Legislature. (*Estate of Phillips*, 203 Cal. 106 [263 P. 1017]; *In re Watts' Estate*, 179 Cal. 20 [175 P. 415]; *McCaughey* v. *Lyall*, 152 Cal. 615 [93 P. 681]; *Estate of Bump*, 152 Cal. 274 [92 P. 643]; *Estate of Porter*, 129 Cal. 86 [61 P. 659, 79 Am.St.Rep. 78]; *Estate of Stanford*, 126 Cal. 112 [54 P. 259, 58 P. 462, 45 L.R.A. 788]; *Estate of Donnelly*, 125 Cal. 417 [58 P. 61]; *Sharp* v. *Loupe*, 120 Cal. 89 [52 P. 134, 586]; *In re Wilmerding's Estate*, 117 Cal. 281 [49 P. 181]; *Childs* v. *Gross*, 41 Cal.App.2d 680 [107 P.2d 424]; *Estate of Stewart*, 30 Cal.App.2d 594 [86 P.2d 1071].) The designation of heirs and the proportions which they shall receive are subject to the legislative will (*Estate of Stanford, supra; In re Wilmerding's Estate, supra*), and ▇ until the death of the ancestor, the right of inheritance is not a vested one but a mere expectancy. (*Estate of Loyd*, 170 Cal. 85 [148 P. 522]; *Estate of Clark*, 94 Cal.App. 453 [271 P. 542]; *Estate of Warner*, 6 Cal.App. 361 [92 P. 191].)

Sections 228 and 229 together provide for the succession of all property in which the predeceased spouse had some interest. Their scope is not limited to community property, and they have been construed as providing that upon the death of the survivor of the marriage, intestate and without issue, the property should go to the family or families of the spouse or spouses through whose efforts the estate was accumulated. (*Estate of Rattray*, 13 Cal.2d 702, 713 [91 P.2d 1042]; *Estate of Putnam*, 219 Cal. 608, 611 [28 P.2d 27]; *Estate of McArthur*, 210 Cal. 439, 445 [292 P. 469, 72 A.L.R. 1318]; *Estate of Mercer*, 205 Cal. 506, 511 [271 P. 1067]; *Estate of Hill*, 179 Cal. 683, 688 [178 P. 710]; *Estate of Brady*, 171 Cal. 1, 4 [151 P. 275].) By these sections, the court has said, the Legislature intended that a lineal descendant of the predeceased spouse should succeed to all property of the surviving spouse in which the predeceased spouse owned an interest; if there were no lineal descendants of either spouse, the property should then be divided equally between the respective families of the two spouses by whose efforts it was accumulated. If, however, the property had originally come to the predeceased spouse by other means

than his efforts during the existence of the marriage, such as acquisition before marriage, or by gift, devise, or bequest subsequent to the marriage, then the Legislature intended that such property should descend, upon the death of the survivor, entirely to the family of the predeceased spouse. (See cases cited *supra*.)

The only way in which that legislative purpose may be given effect is by applying sections 228 and 229 to all property subject to probate proceedings in California, regardless of its prior status in a foreign jurisdiction. Implicit in this construction, of course, is the reclassification, for the purposes of succession only, of property acquired in the foreign jurisdiction in accordance with the community property law of California. Although this court in *Estate of Thornton*, 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343], held that section 164 of the Civil Code was unconstitutional insofar as it purported to reclassify the property of a spouse who acquired it in a common-law state and later brought it to California, the decision was expressly limited to a reclassification during the lifetime of the spouse. Such a change in the incidents and rights of the husband and wife in the property acquired by either of them, said the court, would constitute a disturbance of a vested right, and prior decisions concerning the effect of the statute prevented a determination that it was "part of our succession laws and hence valid as a statute of succession."

Under sections 228 and 229 of the Probate Code, the issue or kindred of the predeceased spouse are statutory heirs of the surviving spouse, and their rights under those sections do not vest until the death of the latter. (*Estate of Watts*, 179 Cal. 20, 23 [175 P. 415]; *Estate of Bixler*, 194 Cal. 585, 595 [229 P. 704].) The property acquired outside of this state during the marital relation is subjected to the laws of succession of California by the fact that, at the time of the death of the surviving spouse, he or she was domiciled within its borders; it may therefore be reclassified under the law of the domicile. In *Estate of Allshouse*, 13 Cal.2d 691 [91 P.2d 887], this court held that, under section 229 of the Probate Code, the origin of an estate may be traced into a foreign jurisdiction and the California classification of property applied to the property there acquired. But the decision was qualified by the requirement that the nature of the foreign ownership must be substantially the

same as that which the property would have if acquired in this state. Upon a reconsideration of the reasoning of that case, it seems obvious that the limitation of section 229 to property, which, in the foreign jurisdiction, had substantially identical incidents to the classifications of property in a community property state has no reasonable foundation and is not consistent with the legislative intent expressed in sections 228 and 229 of the Probate Code. As those statutes affect succession only, their purpose is fully carried out if the probate court distributes the property upon the basis of its classification had it been acquired in California. Applying that rule, it is unnecessary to determine whether the property owned by Wallace T. Perkins at the time of his death would have been community or his separate property if it had been acquired in California. ■ The respondent, as his son, is entitled to all of the estate of Mrs. Perkins which came to her by gift, descent, devise or bequest from the property of her predeceased husband reclassified as either his separate property or that of the community.

■ A further question concerns the manner in which Mrs. Perkins acquired the property which is to be distributed by the probate court. The record shows, without contradiction, that she had no gainful occupation and no independent income. Her husband made repeated gifts of securities to her. Proceeds of his life insurance policies were also a gift to her within the meaning of sections 228 and 229 of the Probate Code. (See *Estate of Rattray, supra,* disapproving *Estate of Miller,* 23 Cal.App.2d 16 [71 P.2d 1117], and *Estate of Lissner,* 27 Cal.App.2d 570 [81 P.2d 448].) The fact that one of these was a group policy and that one-half of the premiums were paid by his employer does not place that policy in any different category from the others. Such a payment of premiums by the employer was merely another and additional form of compensation for the services of the husband.

This evidence fully supports the trial court's findings that the entire estate of Mrs. Perkins, except the sum of $4,313.16, came to her by gift from her previously deceased husband. In view of the fact that the property owned by Mrs. Perkins at the time of her death was appraised at approximately $14,000, probably less than one-third of the amount she received by gift from her husband, and the court allowed her kindred the full amount of the two legacies

which came to her from other persons, the division was favorable to them.

The judgment is affirmed.

Shenk, J., Carter, J., and Schauer, J., concurred.

TRAYNOR, J.—I dissent. The question at issue is not the wisdom of Probate Code sections 228 and 229 or the power of the Legislature to control the succession to property but the applicability of these sections to property acquired by a husband and wife in a common-law state and brought to this state by the surviving spouse who dies intestate here. Their applicability depends neither upon their wisdom nor the range of legislative power but upon whether the Legislature has exercised its power in this particular legislation. Yet the majority opinion gives no heed to the language of Probate Code sections 228 or 229, the provisions of the Civil Code defining community property and separate property, or the decisions of this court interpreting those definitions. Its reasoning is that there is a legislative purpose to give the property to the family of the spouse through whose efforts it was accumulated, and that this purpose can be fulfilled only by applying sections 228 and 229 to all property subject to probate proceedings in California irrespective of its previous character in a foreign jurisdiction. This reasoning admittedly involves a reclassification, for the purposes of succession, of property acquired by a husband and wife while domiciled in a foreign jurisdiction. The majority opinion points to no statutory provisions calling for such a reclassification but attempts to fill the gap by the declaration that such a reclassification is implicit in its own construction of the scope of the legislative purpose. It has thus construed the legislative purpose to extend beyond the legislative language and then read into the language an implication that alone would make possible the execution of the enlarged purpose.

Were the legislative purpose as extensive as the majority opinion construes it to be, its accomplishment would hardly be left to the chance of an implication indirectly arrived at. The Legislature's silence is particularly significant in view of its past activity in bringing within the community property laws property acquired by husbands and wives while domiciled beyond the state's borders. (See *Estate of Frees,*

187 Cal. 150 [201 P. 112]; *Estate of Drishaus,* 199 Cal. 369 [249 P. 515]; *Estate of Thornton,* 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343].) Sections 228 and 229 expressly refer to community property and separate property, terms peculiar to community property laws, and make no provision for translating into these terms property acquired under other laws.

If the property acquired by Mrs. Perkins as gifts from her husband and as beneficiary of his life insurance policies was not community property when she acquired it, or was not transformed into community property when she brought it to California, its succession is not controlled by section 228 of the Probate Code. If it was not separate property of the husband when Mrs. Perkins acquired it from him, section 229 of the Probate Code cannot govern its succession. In other words, if her absolute ownership under the laws of New York was not modified when she became domiciled in this state, her sisters are entitled to succeed to her estate under section 225 of the Probate Code.

At the time of Mrs. Perkins' death section 228 read as follows: "If the decedent leaves neither spouse nor issue, and the estate, or any portion thereof was community property of decedent and a previously deceased spouse . . . such property goes in equal shares to the children of the deceased spouse . . . and if none, then one-half of such community property goes to the parents of the decedent . . . and the other half goes to the parents of the deceased spouse. . . . " Section 229 read as follows: "If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, such property goes to the children of the deceased spouse . . . and if none then to the parents of the deceased spouse. . . . "

These sections embody laws of succession and relate to classifications that existed during the lives of the spouses. (See W. W. Ferrier, Jr., *Rules of Descent Under Probate Code,* §§ 228 and 229, 25 Cal.L.Rev. 261.) They do not define community property or separate property for purposes of succession; they do not even come into operation until the character of the property has been determined under the appropriate statutes governing the classification of property as community or separate. They govern the succession only of what "was community property" and what "was

separate property" during the lives of its owners. The meaning of those terms, and therefore the scope of the sections, can be found only in the definitions in sections 162, 163 and 164 of the Civil Code. If the property is not encompassed by these sections it cannot be regarded as having been community property or the separate property of a predeceased spouse, and sections 228 and 229 can have no application.

Sections 162 and 163 of the Civil Code provide that all property owned by either spouse before marriage or acquired afterwards by gift, bequest, devise or descent, together with the rents, issues, and profits thereof is his or her separate property. Section 164 provides that all other property acquired after marriage by either spouse or both is community property.

These sections could not transform the property in question into community property while it was being acquired by the husband in New York. Nor was the property converted into community property when Mrs. Perkins became domiciled in this state. The provision in section 164 that personal property acquired while the spouses were domiciled elsewhere is community property when it would not be the separate property of either if acquired while domiciled in this state was held unconstitutional in *Estate of Thornton*, 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343]. This case also held that section 164 could not be considered a statute of succession and that its definition of community property did not apply, even for purposes of succession, to property that persons acquired while domiciled in another state. In that case Mr. and Mrs. Thornton came to California with personal property that they acquired while domiciled in Montana. Upon Mr. Thornton's death his wife claimed one-half the property under Probate Code, section 201 providing that "upon the death of either husband or wife one-half of the community property belongs to the surviving spouse." In holding that Civil Code section 164 could not transform the property into community property the court denied Mrs. Thornton's claim to one-half the property under Probate Code, section 201. Justice Langdon dissented on the ground that Probate Code section 201 used the term community property as defined in Civil Code section 164, and as broadened by that definition was constitutional. In the present case Mr. Perkins never came to California with Mrs. Perkins

so that there is even greater reason than in Estate of Thornton for holding that the property brought into this state was not community property. Since Civil Code section 164 does not extend, for purposes of succession under Probate Code section 201, to property acquired in another state, it cannot be so extended for purposes of succession under Probate Code section 228 without an outright repudiation of Estate of Thornton.

Whatever the merits of the majority and dissenting opinions on the highly controversial issues in Estate of Thornton, the Legislature took account of the decision and qualified its effect by adding section 201.5 to the Probate Code providing: "Upon the death of either husband or wife one-half of all personal property, wherever situated, heretofore or hereafter acquired after marriage by either husband or wife, or both, while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state, shall belong to the surviving spouse; the other one-half is subject to the testamentary disposition of decedent, and in absence thereof goes to the surviving spouse. . . . " This section is based on the theory that succession to property acquired by a husband and wife before they were domiciled in this state should be subject to the rule governing the succession to property acquired by spouses domiciled here. It applies only in the case of a surviving spouse and does not extend to such cases as the present one involving heirs other than a surviving spouse. The Legislature was apparently not then ready to devise a provision comparable to section 201.5 that would apply to such situations.

Although the estate in question had its source in Mr. Perkins's marital earnings it was never community property. Since it was not community property when acquired and was not converted into community property when Mrs. Perkins became domiciled here, Probate Code section 228 cannot govern its succession.

Likewise section 229 does not govern its succession. That section does not bring the property within its purview, for the term "separate property" is but a differentiation from the term "community property" in section 228. It is well established that the two sections are interdependent and must be construed together. (*Estate of Rattray,* 13 Cal.2d 702 [91 P.2d 1042]; *Estate of Simonton,* 183 Cal. 53 [190 P.

442].) Section 229 envisages "separate property" as that acquired other than by marital earnings and the fruits thereof envisaged by section 228. (*Estate of Rattray, supra; Estate of Hill,* 179 Cal. 683 [178 P. 710].) When the property in question was acquired by Mr. Perkins in New York it could no more be classified as "separate property" than as "community property" under the laws of this state. As a nonresident who never came to California he was untouched by its laws. He never owned, and therefore never gave community property in the sense of section 228, or separate property in the sense of section 229. In defining "separate property of the husband" section 163 of the Civil Code, in contrast to section 164, does not purport to include property acquired by an owner while domiciled in another state. There is therefore less reason to hold that it includes such property in its definition for purposes of succession under Probate Code section 229 than there would have been to hold in *Estate of Thornton, supra,* that such property could be included in the definition in Civil Code section 164 for purposes of succession under Probate Code section 201. Even if Civil Code section 163 could be given an extraterritorial operation, the property in question as marital earnings would not meet the requirements of separate property set forth in that section. To treat such earnings as if they were separate property would do violence to the scheme of succession embodied in Probate Code sections 228 and 229, which contemplates that in the event both spouses die without lineal descendants, marital earnings are to be inherited equally by the respective families of the two spouses by whose efforts it was accumulated. (*Estate of Hill,* 179 Cal. 683 [178 P. 710].)

In *Estate of Allshouse,* 13 Cal.2d 691 [91 P.2d 887], holding that Probate Code section 229 did not apply to the succession of property that had its source in marital earnings in another state, this court declared: "But the facts of the present case afford no basis for application of the rule. The husband stayed in Missouri and there made provision for his wife and for respondent in contemplation of the operation of the property laws of that jurisdiction. There was no change of marital domicile; no change of situs of the property. The assets were still in Missouri at the time of the husband's death, and they there passed into the ownership of the widow. The widow's act in later establishing a domi-

cile in this state, subjecting her property to its laws, should not have the retroactive effect of a prior act of the husband which would have changed the nature of his own ownership. In short, to reclassify the husband's Missouri holding would be for this state to reach beyond its borders and impose its substantially different classification upon both a former owner and a former ownership which obtained in a foreign jurisdiction. This may not be done.

''Respondent, therefore, is not entitled by virtue of section 229, *supra,* to distribution of the division of property here under discussion. And as there is no California statute of succession which provides that the estate of a widow which originated in transfers to her of property held by her previously deceased husband in common law sole ownership shall revert to the husband's line, an estate derived from such source and brought into California by the widow, who here died intestate and without issue, is her separate property, having for purposes of application of the laws of succession the same status as the separate property of one who has never married. It follows that the portion of decedent's estate which comes within this classification is distributable under section 225 of the Probate Code.''

Likewise in the present case the only ownership with which this court is concerned is that of the widow, who as a single person first brought the property within California law after her husband's death. The ownership of the property by the predeceased spouse and its then classification terminated before the property was brought to California. The ownership and classification of the personal property before it was brought to California by the widow was sole ownership of an unmarried person and had thereafter in California the same status as the property of one who had never married.

Respondent argues that under the law of New York the husband's rights in the property at the time of acquisition were equivalent to the rights of a California husband with respect to separate property in California, and that section 229 should govern the succession of the property as it would separate property in California. The property, however, would not be the husband's separate property had he acquired it while domiciled in this state, but on the contrary would be community property because it represented marital earnings. It is a strange construction that interprets the term ''separate property'' in a California statute to include

the very kind of property it was designed to exclude. Under respondent's theory the terms ''separate property'' and ''community property'' would apply to property of California husbands and wives as the California statutes contemplate, but in their proposed application to the property of non-residents the term ''separate property'' would be made to include property that would be regarded as community property in the case of residents. Confusion and inconsistency would inevitably attend any attempt to translate the property rights of nonresident husbands and wives in a common-law state in terms of the property classifications of a community property state.

The majority opinion having read into Probate Code sections 228 and 229 a legislative intent to reclassify property acquired outside the state proceeds to overrule *Estate of Allshouse, supra,* which would govern this case, on the ground that it is not consistent with the attributed intent. It has gone far afield to avoid the facts that California classifications do not apply to property acquired by husbands and wives while domiciled outside the state and that provisions for the reclassification of property acquired in foreign jurisdictions do not include the rules embodied in sections 228 and 229. It has gone so far afield as to formulate a statute of succession that the Legislature itself did not undertake to formulate when it had occasion to do so. Whatever the court's view of the wisdom of the rules of succession prescribed by the Legislature, it is timely to recall that they are not immutable, and that the task of their periodic revision falls properly to the Legislature. (*Estate of de Cigaran,* 150 Cal. 682, 688 [89 P. 833] ; *Estate of Nigro,* 172 Cal. 474, 477 [156 P. 1019].)

The judgment should be reversed.

Gibson, C. J., and Curtis, J., concurred.

Appellant's petition for a rehearing was denied March 11, 1943. Gibson, C. J., Curtis, J., and Traynor, J., voted for a rehearing.