[Civ. No. 10510. First Appellate District, Division Two.—May 25, 1937.]

BUREAU OF WELFARE, CALIFORNIA TEACHERS' ASSOCIATION, SOUTHERN SECTION (a Corporation), et al., Plaintiffs, Appellants and Respondents, v. LOUIS C. DRAPEAU, as Building and Loan Commissioner, etc., Defendant, Respondent and Appellant.

Tanner, Odell & Taft for Appellant.

James C. Ingebretsen for Respondents.

SPENCE, J.—Plaintiffs filed a complaint entitled "Complaint for declaratory relief, to declare a trust and to recover trust funds". They sought thereby to obtain a declaration of their rights with respect to certain funds deposited with the North American Building-Loan Association prior to the taking over of said association by the defendant building and loan commissioner; to have it declared that said funds were held "in trust and as a preferred claim . . . to be paid before any other claims;" and to have the commissioner directed "to pay over said sums in full to plaintiffs with interest and without any deduction". The original judgment, entered herein on September 3, 1935, was in favor of plaintiffs.

Defendants took an appeal from said original judgment and also made a motion for new trial. The minute order showing the ruling on said motion reads as follows: "Motion of defendant for new trial submitted on October 15, 1935, is now granted in part and findings and judgment ordered amended (see memorandum of opinion on file)." The memorandum of opinion referred to in said order reads as follows:

"On motion for new trial. Further consideration of the issues in this case lead the Court to the conclusion that judgment was erroneously entered for plaintiffs upon the point as to the creation of a special trust fund in favor of plaintiffs. Consideration of the agreement in question, and especially of the provisions of the building and loan statutes, would indicate that plaintiffs are in no different or better position in that regard than are the other applicants and purchasers of 'Investment Savings Certificates'.

"The motion for new trial is therefore granted as to that point: to-wit, as to the status of the fund, and the findings and judgment herein will be changed and amended accordingly to conform to the views herein expressed and against the trust fund theory.

"Upon other points and as to other findings the motion is denied and the judgment will remain."

Thereafter amended findings of fact and conclusions of law were signed and an amended judgment was entered on

November 16, 1935. The amended findings of fact and conclusions of law differed from those previously signed in that the trial court found and concluded "that none of the money deposited by any of the plaintiffs is held in trust by the loan association or the commissioner and the court finds that the action of defendant commissioner in approving the claims of plaintiffs for payment upon the same basis and in the same proportion as the claims of other creditors and investment certificate holders and not otherwise was proper and correct". It further concluded that defendant was "not entitled to deduct an entrance fee in the sum of $10.00 or any entrance fee whatever, from the monies deposited by any of the plaintiffs, or to deduct anything on that account". The amended judgment was entered accordingly. Plaintiffs made a motion to set aside the amended judgment, claiming it was void. Plaintiffs also made a motion under section 663 of the Code of Civil Procedure to set aside the amended judgment and to enter another and different judgment. In addition thereto, plaintiffs made a motion for a new trial. All of said motions were denied.

Plaintiffs have appealed (1) from the portion of the amended judgment reading "That the claims of said plaintiffs and each of them be approved for payment upon the same basis and in the same proportion as the claims of other creditors and investment certificate holders and not otherwise;" (2) from the order denying their motion to set aside the amended judgment as void; and (3) from the order denying their motion under section 663 of the Code of Civil Procedure to set aside the amended judgment and to enter another and different judgment. Defendant took an appeal from the whole of the amended judgment, but it appears from the briefs that defendant is satisfied with said judgment except in so far as it denied to defendant the right to deduct an entrance fee of $10 from the claim of each of the plaintiffs. The three appeals taken by plaintiffs and the two appeals taken by defendant are presented together in one set of briefs. We shall refer to the parties as plaintiffs and defendant throughout this discussion.

Before taking up the procedural points raised, we shall discuss the questions which appear to be determinative of the main controversy on the merits. Plaintiff Bureau of Welfare, California Teachers' Association, Southern Section,

is a corporation whose principal object is to provide for the welfare of retired teachers. The remaining plaintiffs are members of that association who had made deposits with the North American Building-Loan Association pursuant to applications and agreements similar to the one hereinafter set forth. The plan of the Bureau of Welfare sufficiently appears from the recitals found in said application and agreement. We deem it necessary to set forth in full said application and agreement as the main question on this appeal involves the construction placed thereon by the trial court. We have added the letters in parenthesis at the beginning of the paragraphs in order to facilitate reference to the various provisions. The application and agreement of plaintiff Frederick F. Martin was executed on November 17, 1928, and read as follows:

"Read and Understand This Application
Thoroughly Before Signing.
North American Building-Loan
Association
Under State Supervision
712 South Grand Avenue
Los Angeles, California
TRinity 4416

(A) "THIS APPLICATION AND AGREEMENT, made by and between FREDERICK F. MARTIN, Santa Monica, Calif., hereinafter designated as the 'Applicant', party of the first part, NORTH AMERICAN BUILDING–LOAN ASSOCIATION, hereinafter designated as the 'Loan Association', a corporation having an office in the City of Los Angeles, State of California, party of the second part, and BUREAU OF WELFARE, CALIFORNIA TEACHERS' ASSOCIATION, SOUTHERN SECTION, hereinafter designated as the 'Bureau of Welfare', a California Corporation, party of the third part;

"Witnesseth:

(B) "WHEREAS, Bureau of Welfare, aforesaid, has plans for establishing a home to properly care for its members and is desirous of accumulating a fund for the purpose of acquiring land, buildings, and equipping and maintaining said home, and the Applicant being one of other applicants who shall execute identical applications with this, is desirous of assisting in the accumulation of said fund by

investing in certificates of the Loan Association aforesaid, known as Investment Saving Certificates for the benefit of himself and the Bureau of Welfare;

"NOW, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

(C) "1. The Applicant hereby applies to said Loan Association for an Investment Saving Certificate with maturity value of One Thousand Dollars ($1,000.00), and agrees to make monthly payments to said Loan Association of Five Dollars ($5.00) per month for a period of forty-eight (48) Months on said Certificate.

(D) "All said payments shall be credited to an account entitled Bureau of Welfare Account, subject to the provisions of this Agreement, and the Applicant hereby releases and quitclaims all his right, title and interest in and to all monies paid in by him up to and including one-half of the first $240.00, with accrued interest and accumulations on $240.00 in this account, and agrees that the same shall be paid over to the said Bureau of Welfare to be used by it for the purposes above set forth.

(E) "It is further agreed that the money so paid in by said Applicant shall accumulate until said Forty-eight Monthly payments shall have been made, at which time there shall be paid over by said Loan Association to said Bureau of Welfare One Hundred Twenty Dollars ($120.00), together with all interest and accumulations on Two Hundred Forty Dollars ($240.00) during the period of Forty-eight Months aforesaid, and the Applicant shall receive a Prepaid Investment Certificate for One Hundred Twenty Dollars ($120.00), which shall mature ten years from its date of issue and have a maturity value of Two Hundred Forty Dollars ($240.00), it being understood that said Certificate may be cashed in prior to the said term of ten years from its date of issue in accordance with the terms set forth in such Certificate. It is also understood that the Applicant, in lieu of taking the aforesaid Prepaid Investment Certificate for One Hundred Twenty Dollars ($120.00), shall have the right to leave said amount so paid in with said Loan Association and continue thereafter to make monthly payments to said Association of Five Dollars ($5.00) per month until said One Hundred Twenty Dollars ($120.00) and said monthly payments together with interest at Six Per Cent

(6%) per annum compounded monthly totals one Thousand Dollars ($1,000.00). Withdrawal may be made at any time as provided by law.

(F) "It is further understood that in case Five Hundred (500) applications identical with this application, except as to date and name of Applicant, shall not have been obtained before October 1, 1932, the said Bureau of Welfare will transfer and quitclaim back to this Applicant all its right, title and interest in and to any of the funds deposited and accumulated and the Applicant shall thereupon be entitled to receive all of said money paid in by said Applicant, together with all interest earned thereon, less an entrance fee of One Per Cent of the maturity value of the Investment Saving Certificate for which this is an.application, in accordance with law.

(G) "It is understood that this application is made subject to the charter and by-laws of said Loan Association and Section 642 of the Civil Code of the State of California.

(H) "The Applicant shall make payment to the Loan Association by check, draft or money order payable to North American Building-Loan Association, or by cash, at the office of the Association in Los Angeles, California, either in person or by mail.

(I) "2. The Loan Assocation after 500 applications identical with this application, except as to name of Applicants and date, shall have been received shall thereafter hold all payments in said account for the use and benefit of Applicant and of the Bureau of Welfare aforesaid, and the Bureau of Welfare may withdraw the funds accumulated at any time which have been herein asigned to it under the provisions of Section 642 of the Civil Code, up to one-half of the total amount paid in by the Applicant, plus accrued interest upon the amounts paid in, but in no event shall it withdraw more than the sum of $120.00 plus accrued interest on $240.00.

(J) "It is understood that this Agreement may be terminated by the mutual consent of the Applicant and the Bureau of Welfare at any time, and that it shall be terminated on October 1, 1932, unless before that time 500 applications identical with this application, except as to name of Applicant and date, shall have been obtained.

(K) "3. Nothing in this Agreement shall be deemed to create any liability on the part of said Loan Association ex-

cept to handle and care for and pay over the money so paid in according to the terms of this Agreement and in accordance with the laws of the State of California governing building and loan associations. It will from time to time or on demand, render a statement of this account to the Applicant and to the Bureau of Welfare.

(L) ''In consideration of securing these accounts and applications the Loan Association agrees that no charge whatever shall be made for any service performed by it except the Entrance Fee of One Per Cent herein mentioned, which it may retain in the event a withdrawal is made prior to the maturity of the Certificate issued to the Applicant at the end of said term of Forty-eight Months; and it agrees that all monies paid to it on this application shall bear interest at the rate of six per cent per annum compounded monthly on all monthly payments made by said Applicant. It agrees also, that the prepaid Investment Saving Certificate to be issued to said Applicant as herein provided, shall bear interest at the rate of Seven Per Cent per annum compounded semi-annually until said Certificate shall have matured at the end of Ten Years to the sum of $240.00.

(M) ''4. Should the Applicant die before the said period of Forty-eight Monthly payments shall expire, then and in that case all money paid in up to the sum of $240.00 by said Applicant, with the accumulated interest thereon, shall be subject to withdrawal as follows: One-half, plus all accumulated interest, by the Bureau of Welfare aforesaid, and the other half of principal by the administrator, executor or heirs of the Applicant in the manner provided by law.

(N) ''5. The Bureau of Welfare agrees on its part that unless 500 applications, identical with this application except as to name of Applicant and date, shall have been received by said Loan Association prior to October 1, 1932, it will forthwith quitclaim and assign to the Applicant all its interest in any fund deposited or paid in by said Applicant, including the accumulations thereon.

(O) ''Said Bureau of Welfare further agrees that it will use all money received under this Agreement for the purpose of acquiring land, erecting buildings, and equipping and maintaining the same for a home for the members of the Bureau of Welfare, California Teachers' Association, Southern Section; and that should it fail so to do within Five Years after October 1, 1932, it will return and pay to said

Applicant, his or her heirs, administrators, or executors, the sum received by it through and under this Agreement. It is understood that the consideration of this Agreement as between Applicant and the Bureau of Welfare is a mutual contribution of at least 500 applicants under identical contracts, except as to names of applicants and dates, for the purposes herein set forth.

(P) "6. This Agreement shall inure to the benefit of and be binding upon the heirs, administrators, executors and assigns of the parties hereto. It shall be signed in triplicate by all the parties hereto, and one copy thereof shall be retained by the Applicant, one copy delivered to the Bureau of Welfare, and one copy filed with the said Loan Association."

On April 1, 1932, defendant directed the building and loan association to refrain from accepting further deposits of any kind and on July 8, 1932, said defendant demanded and took possession of property, business and assets of said association under the authority vested in him by section 13.11 of the Building and Loan Act. (Stats. 1931, p. 539.) Prior to that time, said Frederick F. Martin and 467 other persons including all the plaintiffs herein, had executed applications and agreements similar to the one above set forth.

It appears from what has been said that plaintiffs were seeking by this action to obtain a preference in the liquidation of the building and loan association over other investors in said association. They claimed that by reason of the terms of said applications and agreements, the association held their deposits "in trust for the bureau of welfare and the applicants" and their main contention on this appeal is that amended findings to the contrary are not sustained by the evidence. We are of the opinion that there is no merit in this contention.

We find nothing in said applications and agreements to show that a trust relationship was intended between the plaintiffs and the building and loan associations as to deposits made thereunder but on the contrary, there are many provisions found therein which show that no trust relationship was intended. The main purpose of the instruments executed by plaintiffs was obviously to define the rights of the several plaintiffs among themselves and between themselves and the Bureau of Welfare. The further purpose of the instruments was to serve as applications to the building and

loan association for investment saving certificates under certain terms and conditions including an option to be exercised after 48 monthly payments had been made. In the heading the instrument was referred to as an "application" and in paragraph (A), it was referred to as an "application and agreement"; in paragraph (B) it was recited that the applicant was one of several applicants who was desirous of accumulating a fund "by investing in certificates of the Loan Association aforesaid, known as Investment Saving Certificates"; in paragraph (C), the applicant applied for an "Investment Saving Certificate"; in paragraph (G), it was stated "It is understood that this application is made subject to the charter and by-laws of said Loan Association and Section 642 of the Civil Code of the State of California"; in paragraph (I), the withdrawal of funds by the Bureau of Welfare was made subject to the last-mentioned section of said Civil Code and in paragraphs (E), (F) and (M), it was provided that withdrawals could be made only "as provided by law" or "in accordance with law" or "in the manner provided by law"; in paragraph (K) it was specifically provided that nothing in the agreement should be deemed to create any liability on the loan association except to handle the money "according to the terms of this Agreement and in accordance with the laws of the State of California governing building and loan associations"; in paragraph (L), it was provided that "all monies paid to it on this application shall bear interest at the rate of six per cent per annum compounded monthly on all monthly payments made by said Applicant" and there were other provisions regarding interest in said paragraph and also in paragraphs (E) and (F). These provisions clearly indicate that, except in certain details required by the agreement between the applicants and the Bureau of Welfare, the relationship of the building and loan association to the plaintiffs was to be in all respects similar to its relationship to other investors; that it was to have the right to the unrestricted use of the funds deposited and was to pay interest for that use; that the right to withdraw any part of said funds was to be the same as the right of investors generally as provided by section 642 of the Civil Code; and that only such liabilities were to be incurred by the building and loan association as were provided in the agreement "and in accordance with the laws

of the State of California governing building and loan associations''. In view of these features contained in said instrument, we do not deem it necessary to discuss the authorities cited by plaintiffs as we find none in point. We conclude that the instrument before us shows that no trust relationship was intended or created and that the trial court properly so found and concluded in its amended findings of fact and conclusions of law.

On defendant's appeal from the amended judgment, it is contended that the trial court erred in not deducting the sum of $10 as an ''entrance fee'' from the amount for which the claim of each plaintiff was approved. We find no merit in this contention. In the present case, the application and agreement specifically provided for the conditions under which an entrance fee would become due from the applicant. These conditions were contained in paragraphs (F) and (L). The building and loan association went into liquidation several months prior to October 1, 1932, the time fixed in paragraph (F) for obtaining 500 applications. There were no withdrawals by any of the plaintiffs prior to the time fixed in paragraph (L). Under these circumstances, no entrance fee was due to the building and loan association and there was no error in the trial court's ruling on this point.

The procedural points raised by plaintiffs involve the propriety of the trial court's order in ruling upon the motion for new trial and the propriety of the trial court's action in signing amended findings and entering an amended judgment after making said order. The order made in ruling upon the motion for new trial is hereinabove set forth in full as is also the memorandum of opinion filed therewith which was incorporated by reference in said order. The trial court was obviously seeking to exercise the powers granted to it under section 662 of the Code of Civil Procedure. Said section reads as follows:

''In ruling on such motion, in a cause tried without a jury, the court may, on such terms as may be just, change or add to the findings, modify the judgment, in whole or in part, vacate the judgment, in whole or in part, and grant a new trial on all or part of the issues, or, in lieu of granting a new trial, may vacate and set aside the findings and judgment and reopen the case for further proceedings and the introduction of additional evidence with the same effect as if the case had been reopened after the submission thereof

and before findings had been filed or judgment rendered. Any judgment thereafter entered shall be subject to the provisions of sections 657 and 659 of this code.''

Under said section, the trial court is given broad powers ''in ruling on such motion'' and said section is to be liberally construed to accomplish its purposes. (*Shimpones* v. *Stickney*, 219 Cal. 637, 642 [28 Pac. (2d) 673].) As was said in *Spier* v. *Lang*, 4 Cal. (2d) 711 [53 Pac. (2d) 138], the trial court is thereby given ''the broad power to change its findings and to modify its judgment and thus avoid the necessity of a new trial. This was to subserve the ends of justice and to prevent unnecessary delays in cases where the court deemed itself mistaken as to its previous view of the evidence or in the application thereto of the law.'' In other words, if the trial court does not believe it necessary to have a new trial for the purpose of re-examining the issues of fact, it has the power to order its findings and judgment changed but this power may be exercised ''only in conjunction with a ruling upon the motion for a new trial''. (*Treat* v. *Superior Court*, 7 Cal. (2d) 636 [62 Pac. (2d) 147].)

If the trial court deems it proper merely to change its findings and judgment rather than to have a new trial in a given case, it appears settled that the proper practice is to deny the motion for new trial and, in conjunction with such ruling, to grant the alternative relief provided in said section. (*Spier* v. *Lang, supra*; *Wyman* v. *Monolith Portland Cement Co.*, 3 Cal. App. (2d) 540 [39 Pac. (2d) 510]; *De Arman* v. *Connelly*, 134 Cal. App. 173 [25 Pac. (2d) 24]; *Knight* v. *Paulton*, 125 Cal. App. 688 [14 Pac. (2d) 94]; see, also, *Treat* v. *Superior Court, supra; R. Bancroft & Sons Co.* v. *Cullen*, 213 Cal. 208 [2 Pac. (2d) 353].) But this practice has led to some confusion, as it involves a denial *in toto* of the relief demanded in the motion for new trial and the granting of other and different relief in conjunction with the ruling on the motion. Such confusion appeared in the minds of counsel in *Spier* v. *Lang, supra*, where it was contended that such alternative relief could not be granted except upon the granting of the motion for new trial, but this contention was held to be without merit. In fact, it has been held that when a motion for new trial is granted ''in general terms'', the cause stands ''in the exact situation in which it was before any trial thereof had

been had" (*Bloomquist* v. *Haley*, 204 Cal. 258 [268 Pac. 364]), and that no *subsequent* order may be made modifying the judgment previously entered. (*Mitchell* v. *Rasey*, 139 Cal. App. 350 [33 Pac. (2d) 1056]; *Sparr* v. *Byers*, 139 Cal. App. 668 [34 Pac. (2d) 787].)

In the light of these authorities, we may now consider the action of the trial court in the present case. In its order, the trial court stated "Motion of defendant for new trial . . . is now granted in part and findings and judgment ordered amended (see memorandum of opinion on file)". In said memorandum, the trial court stated, "The motion for new trial is therefore granted as to that point: to-wit, as to the status of the fund, and the findings and judgment herein will be changed and amended accordingly to conform to the views herein expressed and against the trust fund theory. Upon other points and as to other findings the motion is denied and the judgment will remain."

Reading the order as a whole and particularly in the light of the memorandum which was referred to therein, it is entirely apparent that the trial court did not intend thereby to grant a new trial "in general terms" or to grant a new trial as to any issue in the sense of granting a "reexamination of an issue of fact" (Code Civ. Proc., sec. 656), as though no trial had been previously had. While the trial court used the expression "granted in part" in the order and the expression "granted as to that point" in the memorandum, these expressions were followed immediately by the order for the change and amendment of the findings and judgment to conform to its corrected views with respect to the legal effect of the applications and agreements. It is therefore clear that the trial court merely intended to grant the alternative relief under said section 662 in ruling upon the motion for new trial. We are therefore of the opinion that regardless of the form of the trial court's order, it constituted in substance and effect an order denying the motion for new trial and granting such alternative relief. The decision in *Garcia* v. *Bechtol*, 134 Cal. App. 615 [25 Pac. (2d) 987], lends support to this view. If we are correct in so treating the order made by the trial court, then under the authorities cited, there is no question from a procedural standpoint regarding the propriety of that order or the propriety of the action of the trial court in subsequently signing the amended findings and the amended judgment.

But even if we are in error in the views which we have expressed regarding said order, we are nevertheless of the opinion that the amended judgment should be affirmed. If said order be treated as one granting a new trial as to any or all issues of fact, we find from an examination of the transcript and the briefs in this case that there is no controversy whatever between the parties on any issue of fact. The sole issue is one of law involving the determination of the legal effect of the applications and agreements executed by the several plaintiffs. If the trial court erred in signing amended findings and entering an amended judgment without first hearing the cause on a trial *de novo,* then there is no showing that such error has resulted in miscarriage of justice. (Const., art. VI, sec. 4½.) In fact, it affirmatively appears from what has been said above regarding the issue of law involved, that a second trial of the cause would have necessarily resulted in a judgment similar in all respects to the one from which plaintiffs have appealed.

The appeal from the original judgment entered on September 3, 1935, is dismissed; the amended judgment entered on November 16, 1935, is affirmed; and the orders denying plaintiffs' motions to set aside said amended judgment are also affirmed.

Sturtevant, J., concurred.