[S. F. Nos. 18331, 18332. In Bank. June 28, 1951.]

WESLEY KING, Appellant, v. FRANK C. MORTIMER, as Building and Loan Commissioner, etc., et al., Respondents.

Morse Erskine, Alden Ames, Erskine, Erskine, Erskine & Tulley and Erskine, Pillsbury & Tulley, for Appellant.

Sullivan, Roche, Johnson & Farraher and James Farraher for Respondents.

SHENK, J.—The plaintiff sued as the assignee of 250 former investment certificate holders of Pacific States Savings and Loan Company to set aside the sales of their certificates and for reinstatement as certificate holders, or for damages. The action is based on alleged illegal acts and fraud of the defendant corporation. The Building and Loan Commissioner of the state was joined as a defendant. A judgment was entered on an order sustaining the defendants' demurrer to plaintiffs' amended complaint without leave to amend. The plaintiff appealed.

This is the second appeal in the case. The first appeal also was by the plaintiff from a judgment entered on an order sustaining the defendants' demurrer to the original complaint without leave to amend. That judgment was reversed on the ground that leave to amend should have been granted. (*King* v. *Mortimer* (Jan. 1948), 83 Cal.App.2d 153 [188 P.2d 502].)

The amended complaint was filed on April 27, 1948. That pleading and the decisions in prior cases involving the affairs of Pacific States Savings and Loan Company (herein also

referred to as the association) give the historical background leading to the present action. (See *Pacific States Sav. & L. Co.* v. *Hise*, 25 Cal.2d 822 [155 P.2d 809, 158 A.L.R. 955]; *King* v. *Pacific States Sav. & L. Co.*, 26 Cal.2d 333 [158 P.2d 561].)

Pacific States was organized as a building and loan association in 1889. Operations of the association continued in good financial condition until 1929, when due to the world-wide economic depression its affairs became involved by the necessity to foreclose on real property holdings and because of excess demands for withdrawals by investors. On March 4, 1939, the Building and Loan Commissioner took possession of the association's property, business and assets. It is alleged that beginning in 1931 to the date of the commissioner's possession, the association through its agents engaged in a course of conduct designed to acquire outstanding investment certificates at less than their face value; that it commenced the sale of foreclosed properties to acquire funds for that purpose; that there was a market for its investment certificates by reason of the fact that holders were offering their certificates for sale and that they were being purchased; that the association had the power to and did within limits control the bid prices for the investment certificates although it could not fix prices so low that holders would not be induced to accept the prices offered; that the association was always able to fix prices on the market at substantially less than the face amount. The association purchased investment certificates aggregating $26,500,000 face value for approximately $17,500,000, representing a difference of approximately $9,000,000 between the face amount of the certificates and the amount for which they were purchased. The plaintiff's assignors in the present action represent and seek to recover $690,646.78 of that difference. The action was commenced on October 18, 1943. It will be assumed that the present complaint sufficiently indicates that claims for the amount sought were theretofore duly presented to the Building and Loan Commissioner and were rejected.

The original complaint was framed to recover the stated difference on the theory that the alleged course of conduct rendered the purchases by the association illegal and void. In holding on the prior appeal that the plaintiff should have been permitted to amend, the District Court of Appeal said: "It must be conceded that the complaint does not plead sufficient facts upon which the transactions complained of could

be held void." After mentioning the former case of *King* v. *Pacific States Sav. & L. Co.*, (*supra* 26 Cal.2d 333) the court continued: "The case we have here is also founded upon charges of fraud. Unless the plaintiff can amend his complaint to show affirmatively wherein the contracts involved were void and not merely voidable, we must assume that if the plaintiff can recover at all it must be on the theory that the transactions complained of were voidable because of the fraudulent misrepresentations which brought them about. On this theory it would·become necessary for him to rescind the transactions and restore everything of value which he had received, or to plead facts showing that plaintiff's assignors were entitled in any event to retain what they had received," citing section 1691 of the Civil Code.

The amended complaint was an attempt to comply with the declared requirements. The questions to be determined are whether the complaint as amended contains allegations of fact sufficient to support a conclusion that the transactions were void; and if not, whether the plaintiff has brought himself within the provisions of section 1691 of the Civil Code by alleging restoration of or offer to restore benefits received, or facts showing the right to retain them in any event. The plaintiff has also added alleged causes for the alternative relief in damages in the event he has failed in the other respects. (See *Bancroft* v. *Woodward,* 183 Cal. 99, 102 [190 P. 445].)

The plaintiff contends that the facts alleged in the amended complaint show a violation of section 6.02 of the Building and Loan Association Act as in effect during the times involved (Stats. 1931, p. 483; 1933, pp. 309, 1098, 1101; 1935, p. 800; 1 Deering's Gen. Laws, Act 986.) The section placed limitations on investors' withdrawals of funds by defining matured withdrawal claims (see section 6.01 for requirements to file notice of intention to withdraw by certificate holders), preferred claims, and "free money"; by stating when available funds are free money, when an association is on notice, or on a pro rata basis and by regulating when free money may be used and for what purpose. It is claimed that the alleged use of association funds was contrary to that section and was also prohibited by sections 9.01 and 9.02 which regulated the investments and loans that the association might make.

Section 6.02 prohibited the association from making a contract waiving the provisions of the section and provided that any such contract should be null and void. Section 14.05

declared the wilful violation of any provision of the act to be punishable as a criminal offense. Section 14.07 stated that except as "otherwise expressly provided in this act, no violation of any of the provisions of this act shall render invalid any agreement, contract, stock, share, investment certificate, note, trust deed, mortgage or other instrument."

The plaintiff argues that the purchases of the certificates were void as contracts of waiver. Manifestly the transactions sought to be avoided were themselves not contracts of waiver of the provisions of section 6.02. They were purchases of the certificates on an admitted open market. No contracts of waiver are alleged. Thus the transactions were neither contracts of waiver nor pursuant to such contracts.

If the purchases on the market were contrary to the act as unlawful use of association funds, it may be assumed that they were violations but, pursuant to section 14.07, they were not thereby rendered invalid. That express prohibition against invalidity of the unlawful acts prevents the application of the general rule relied on by the plaintiff that when a statute prohibits or attaches a penalty to the doing of an act, the act is void. (See *Smith* v. *Bach,* 183 Cal. 259, 262 [191 P. 14] ; *Stevens* v. *Boyes Hot Springs Co.,* 113 Cal.App. 479, 482-484 [298 P. 508], for statement of the general rule.)

The act of 1931 was a continuation of prior law (§ 14.03) with additions including saving clauses (§ 14.04). The plaintiff contends that since section 14.07 was an addition in 1931 and therefore was not the law at the time the assignors became investors (or so we shall assume), it should not apply. He thereby invokes another general rule, namely, that the provisions of the law in force at the time the contract was made constitute a part of the contract. He argues that the addition of section 14.07 in 1931 was a subsequent material change which would unconstitutionally affect the assignors' vested contractual rights (U. S. Const., art. I, § 10). It is unnecessary to consider what weight this argument might have if it were directed to purchases of assignors' certificates occurring prior to August 14, 1931, the effective date of section 14.07. None of the alleged transfers was made prior to that date. When the assignors became investors section 1 of article XII of the state Constitution provided that all laws concerning corporations and all such future laws might be altered from time to time or repealed. Thus it was not a contractual right of investors that the Legislature could not make a subsequent change in the legal effect of a future violation of the act by

the association. The further argument that the provisions of the act are for the protection of the investor and that the court should so apply them even to the exclusion of those deemed undesirable to that end is obviously not valid. The question of what balance should be maintained between individual investors and the association as a whole in the protective measures to be included is the concern of the Legislature. It was a matter for that body to consider what might be the disastrous possibilities if unlawful acts of such associations were to be held void. It was for the Legislature to determine whether in a proper case the investor should be held to the equitable remedy of rescission. It follows that the amended complaint does not allege facts sufficient to support a conclusion that the transactions were void.

The next question is whether the plaintiff has sufficiently alleged the right to the equitable remedy of rescission; or, in the alternative, the right to recover damages.

Pursuant to section 1691 of the Civil Code the assignors' duty was to rescind promptly upon discovery of the alleged fraud and to restore or offer to restore everything of value received under the contract sought to be rescinded, namely, the price paid for their certificates.

Even if it be assumed that the alleged notices of rescission were sufficient from a standpoint of intention and timeliness, yet admittedly there was neither a restoration of nor an offer to restore the amounts received on the sale of the certificates. The plaintiff contends that the assignors are entitled to retain in any event the amounts they received on the sales. This contention may be deemed correct only if under the alleged alternative cause the measure of the damages is the difference between what the assignors received and the face amount of the certificates. For if what the assignors received on the sale of their certificates was part of an undisputed larger claim or debt then due, that measure would control at law, and in equity would determine the right to retain the benefits received. (*Gilson Q. M. Co.* v. *Gilson,* 47 Cal. 597; *Westerfeld* v. *New York Life Ins. Co.,* 129 Cal. 68 [58 P. 92, 61 P. 667]; *Matteson* v. *Wagoner,* 147 Cal. 739 [82 P. 436]; *Taylor* v. *Hopper,* 207 Cal. 102, 105 [276 P. 990]; *MacIsaac* v. *Pozzo,* 26 Cal.2d 809, 815 [161 P.2d 449].)

To substantiate his contention that there was an undisputed claim then due in the face amount of the certificates sold, the plaintiff looks only to the face amount of the certificates. He likens the face amount to an unpaid judgment for the

436

recovery of a specified sum of money and argues that the possible insolvency of the association at the time the assignors sold for less than the amount ''due'' does not affect the measure of the damages recoverable on account of the alleged fraud.

■ Since the objective in equity is to place the rescinding party in his former position, the collectibility of a debt or judgment has no bearing on the amount recoverable. (*Campbell* v. *Birch,* 19 Cal.2d 778, 790-793 [122 P.2d 902]; *Bank of America* v. *Greenbach,* 98 Cal.App.2d 220, 238-239, 305-306 [219 P.2d 814].) ■ Here it is true that the condition of the association and the *measure* of the damages are unrelated, but it does not follow that the correct measure is the one invoked. The fallacy in the plaintiff's argument is the assumption that at the time of the sale of the certificates there was an undisputed claim due in the face amount of the certificates or in any amount. The situation might have been comparable to the cases relied on involving fraudulent settlement of existing judgments, if the assignors had matured claims for withdrawal in the amounts of their certificates and they were by fraud induced to take less. Contrary to the plaintiff's assumption however the complaint fails to show that there was any matured claim or debt due to the assignors from the association at the time they sold their certificates.

In the final analysis neither the alleged cause for rescission nor that for damages may be premised on an assumption that the certificates had an undisputed value in the face amount. The pleading discloses the unquestionable fact of the existence of an open market for the investors' certificates; that due to association losses sustained by necessary real property foreclosures, and the insolvency or threatened insolvency of the association because of the widespread economic conditions which materially depressed values generally, the sale value of the certificates offered in the open market was also affected. The plaintiff's assignors sold in this adverse market. Therefore the only measure of their damages is that provided by section 3343 of the Civil Code, namely, the difference between the price at which they sold and any greater amount which the market would have brought save for the alleged fraudulent conduct of the association. No facts in this connection are alleged or relied on.

It must follow that the plaintiff has not shown sufficient facts to support a recovery on either of the alternative grounds. ■ As to damages, the material facts by which the proper measure may be applied are lacking. The only measure offered

is contained in the allegation that if the assignors had not been induced by the alleged fraud to sell their certificates but had retained them, they would have been paid during liquidation the full amount of their certificates; that therefore they were damaged in the amount of the difference between the face amount and the amount paid, or $690,646.78. All that the plaintiff is saying is what might have been, had rescission been accomplished. ■ As to rescission, the facts alleged do not disclose the assignors' right to retain the consideration received on the sale of their certificates and at the same time be reinstated in the position of the investors who retained their certificates pending liquidation and eventually participated in the increased values of the association's assets following the second world war. It would be impossible now to compute what the outcome would have been had liquidation proceeded with the assignors in the position of continuing certificate holders pursuant to an accomplished rescission. It would also be highly inequitable at this stage of the proceedings, nearly 20 years after the alleged activities, for the court to make unprecedented exceptions to the rules applicable in rescission by permitting the assignors to share in property and assets in the preservation of which they declined to continue their support by failing to comply with equitable requirements at the time of their attempted rescission. The court may not thus secure for them a continuing choice to be out or in, depending on whether the fortunes of economics took a turn for worse or better. To do so would be in effect to treat the alleged sales as void rather than voidable, a result expressly prohibited by the statute.

■ Nor is there ground for extending relief on the basis that a fiduciary relationship existed between the association and the certificate holders. There is nothing in the investment contract, in the statute, or in the facts alleged indicating the creation of that relationship. No case so holding is cited and the treatment in pertinent cases is a recognition that the relation is that of debtor and creditor. (See *In re Pacific Coast Bldg.-Loan Assn.*, 15 Cal.2d 134 [99 P.2d 251]; *Bureau of Welfare, etc. Assn.* v. *Drapeau*, 21 Cal.App.2d 138, 146 [68 P.2d 998]; *Zottarelli* v. *Pacific States Sav. & L. Co.* 94 Cal.App.2d 480, 502 [211 P.2d 23].) The duties and obligations of the association are set forth in the statute; the statute provides what penalties shall follow from violations thereof, and prohibits resulting contracts to be treated as void.

 The insuperable obstacle which the plaintiff faces is that, conceding a possible cause for relief, he or his assignors failed to take the necessary steps to secure for themselves the only remedy by which they could again be made whole. As a consequence of this failure the plaintiff cannot recover what he seeks, namely, the difference between the price at which his assignors sold their certificates and the face amount thereof.

The amended complaint does not meet the requirements which were held on the prior appeal to be essential to a sufficient statement of a triable cause. And the foregoing also compels the conclusion that such a cause cannot be stated.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I am of the opinion that plaintiff's amended complaint stated a cause of action for fraud and that the demurrer thereto should not have been sustained.

As I pointed out in my dissent in *King* v. *Pacific States Sav. & L. Co.*, 26 Cal.2d 333 [158 P.2d 561], the evidence produced in that case was more than sufficient to show fraudulent conduct on the part of Pacific States in buying the certificates held by various investors for less than their face value. I also pointed out that the trial court in the case of *Pacific States Sav. & L. Co.* v. *Hise* 25 Cal.2d 822 [155 P.2d 809, 158 A.L.R. 955] (where the propriety of the seizure of Pacific States by the Building & Loan Commissioner was challenged) had found that misrepresentation and coercion had been resorted to by Pacific States in the acquisition of its outstanding shares. This court, in the Hise case, did not disapprove those findings but on the contrary found it not necessary to determine the sufficiency of the evidence on which they were based. These three cases have their bases on the same set of facts. In the second case, *King* v. *Pacific States Sav. & L. Co.*, the majority held that there was no evidence of fraud, either actual or constructive, to support plaintiff's charge. The majority here, in the third case, holds that plaintiff has stated no cause of action, nor can he do so. And yet the facts are the same. As I read the majority opinion, it appears to be conceded that plaintiff would have stated a cause of action had he or his assignors taken the necessary steps to effect a rescission—namely, an offer to restore the consideration which had

been received or facts showing the right to retain that amount. All of the relevant information with respect to the certificates was made part of the amended complaint.

To hold that it would be inequitable at this time to allow plaintiff's assignors to retain the benefits received and recover the difference between that amount and the face value of the certificates is to hold that form is more important than justice. To my mind Mr. Justice Bray of the District Court of Appeal correctly disposed of this point and I hereby adopt that portion of his opinion which refers to Counts 3 and 4:

"These two counts are based on allegations of fraud and rescission, the only difference between the third and fourth being that plaintiff alleges that a fiduciary relationship existed between his assignors and Pacific States. Plaintiff incorporates by reference in both counts the proof of claim which, pursuant to notice, he filed with the commissioner. This states that 'the facts in support of Claimant's demands are set forth by the testimony and exhibits introduced in the case of *"Wesley King* v. *Pacific States Savings & Loan Company,"* No. 277,900, in the Superior Court of the State of California, in and for the City and County of San Francisco, and in its case of *"Pacific States Savings and Loan Company* v. *Evans, Commissioner,"* in the same Superior Court, to which testimony and exhibits reference is hereby made as though set forth at length and made a part of this demand; . . .'

"Defendants claim that plaintiff has not alleged a true rescission, because there was no notice of rescission and no offer to restore.

"NOTICE OF RESCISSION

"The only allegation concerning any notice of rescission is the following: 'On or about February 3rd, 1938, plaintiff gave Pacific States written notice as follows: that the last mentioned assignors had assigned to him their claims to recover from it said balances of their deposits shown on said Exhibit "C"; that plaintiff was demanding payment of the last mentioned claims from Pacific States; and that if Pacific States did not pay the last mentioned claims, plaintiff would commence suit to enforce their payment.'

"This allegation is repeated as to other lists of assignors. As said in *McNeese* v. *McNeese,* 190 Cal. 402, 405 [213 P. 36] : 'It is not necessary that the notice to rescind shall be formal and explicit; it is sufficient that notice shall be given to the other party which clearly shows the intention of the person

rescinding to consider the contract at an end. It has been held in other states that the mere bringing of an action is a sufficient disaffirmance of a sale.'

"Applying this test, it is obvious that the notice given clearly shows the intention of plaintiff to consider the contract, that is, the sale of the certificates for the price received, at an end. The notice was sufficient unless plaintiff was required to offer to restore the purchase price.

## "Was Offer to Restore Necessary?

"This depends upon what the true measure of damages was at the time of the sale, for if plaintiff was entitled in any event to retain the purchase price, no offer to restore was necessary. 'It is settled by our decisions that one attempting to rescind a transaction on the ground of fraud is not required to restore that which, in any event, he would be entitled to retain. (See *Matteson* v. *Wagoner*, 147 Cal. 739, 743 [82 P. 436], and cases there cited.) This is upon the theory that the defendant could not possibly have been injuriously affected by the failure to restore, and the plaintiff might be, for he might not be able to again collect the amount from the defendant, if it should be so restored to the defendant.' (*California etc. Co.* v. *Schiappa-Pietra*, 151 Cal. 732, 740 [91 P. 593].)

"Defendants contend that the measure was that set forth in section 3343 of the Civil Code, namely, the difference between the actual value of the certificates and the amount paid. Plaintiff contends that it is the measure set forth in *Campbell* v. *Birch*, 19 Cal.2d 778 [122 P.2d 902], and *Bank of America* v. *Greenbach*, 98 Cal.App.2d 220 [219 P.2d 814], namely, the difference between the face value of the certificates and the amount paid. Ordinarily, the measure of damages for fraud is that set forth in section 3343 of the Civil Code. But there is an exception to that rule. *Campbell* v. *Birch, supra* (19 Cal.2d 778) sets forth that where the claims compromised through fraud are not disputed as to their amount, or as to their existence, the one defrauded is entitled to their face value. In that case, due to fraudulent representations as to his lack of financial responsibility, Birch induced Campbell to compromise an indebtedness of $9,412.59 including over $6,000 of judgments, and to agree to a reduction in the rental payments of a five-year lease from $1,000 to $500 per month, all for a payment of $6,000. Later, discovering the fraud, Campbell sued in fraud and deceit to recover the indebtedness including the face value of the judgments, and the accrued

rental. The court held that where there is an *undisputed* claim the defrauded party does not have to prove collectibility, distinguishing the facts of its case from *Westerfeld* v. *New York Life Ins. Co.*, 129 Cal. 68 [58 P. 92, 61 P. 667], which held that where the compromised claim was a disputed claim, there must be proof of collectibility. The court then said, referring to the compromised claims: 'In effect, the cause of action is one where the damage suffered by the defrauded party is fixed and certain—just as fixed and certain as if the defrauded party had technically rescinded. Obviously, if no compromise had been made, plaintiff would have been entitled to a judgment or judgments for the unpaid rent. The judgment in the present case is exactly in the amount the plaintiff would have been entitled to if no compromise induced by defendants' fraud, had been negotiated. What other measure of damages would compensate the defrauded party under such circumstances? The only way the defrauded party can be made whole is to return to him the amount to which he admittedly would be entitled had the fraudulent compromise not been secured. To urge that the defrauded party must show that the undisputed liability was in fact collectible in the sense that the defendants were financially responsible is to bring in a false issue. Courts in rendering judgments are not interested in whether the plaintiff can collect the same—they are concerned with the amount of the damage suffered. The collectibility of the compromised judgments and claims and the collectibility of the present judgment, are matters which are entirely beyond the issues in this case. When the plaintiff proved the claims were fixed, definite and admitted as to their existence and amount he proved they were ''collectible'' as that term is used in such cases.' (P. 793.)

''Defendants contend that on rescission all plaintiff would be entitled to was a return of the certificates. If this were true, then in the Campbell case, all the plaintiff would have been entitled to was the compromised claims rather than what the court held he was entitled to, their face value. Likewise, on such a basis, plaintiff in the Bank of America case would have been given back his judgment only, and not damages in its face value. Here, the claim (the face value of the certificates), and its existence could not be disputed. True, the question of whether it would be collectible was uncertain, but so were the judgments in the Campbell case. Here, the relation between the certificate holders and defendants was

that of creditors and debtors. The amount of the debt was the face value of the certificates, and their value, as said in the Campbell case, is 'prima facie the difference between the amount paid on the compromise and the face amount of the fixed and certain claim.' (P. 793.)

"In *Bank of America* v. *Greenbach, supra* (98 Cal.App.2d 220), we held that where a creditor had been induced by fraud to settle a judgment for less than its full amount, the creditor was entitled to restoration of the full judgment (less the amount paid) rather than a judgment for the creditor's pro rata share of the debtor's assets at the time of the fraud. 'There is no authority cited, and no logical argument made, that support the conclusion that a creditor, fraudulently induced to enter into a settlement of his claim upon material misrepresentations as to assets, can or should be limited, in a rescission action, to a judgment for the pro rata share of the assets of the debtor as they existed on the date of settlement. The cancellation of an agreement of settlement necessarily has the effect of placing the parties where they were before the settlement was made. It is as if the settlement had never been made. Authorities are legion and uniform to the effect that the legal effect of a rescission is to restore both parties to their former position as far as possible. (3 Pomeroy, Equity Jur. (5th ed.) 578; 3 Black on Rescission and Cancellation, p. 1660, § 700; 15 C.J.S. p. 767, § 43.) The authorities also agree that, concurrent with the award of rescission, the trial court may award money damages or order such other relief as justice may require. (4 Cal.Jur. p. 797, § 29.) In the present case the court canceled the settlement agreement. It should then have reinstated the original judgment. The amount of that judgment is fixed and certain.' (P. 238.) To hold otherwise in this case would put a premium on fraud.

"The mere fact that the debt of Pacific States to the certificate holder as evidenced by the certificate, was not immediately due or payable, does not make the amount of that debt any less fixed, definite or admitted. There is no logical distinction between the indebtedness in the Campbell case and the judgment in the Bank of America case, and the certificates in this case. Here there were no *disputed* claims as there were in *Westerfeld* v. *New York Life Ins. Co., supra* (129 Cal. 68). On demurrer we must accept the allegations of the complaint as true. It is alleged, among other things, that the Pacific States fraudulently depressed the market so that it might induce holders to sell their certificates. If the measure of dam-

ages was the difference between the amount received and the then actual value of the certificates (the depressed market value) the defendants would be in the position of saying, in effect, 'True, we fraudulently induced you to sell your certificates, but, as we had succeeded in holding their value down to the amount we paid you, there is nothing you can do about it.' They would be profiting by their own fraud, and the courts would be standing helplessly by, permitting them to reap the harvest. The same would be true as to the actual value, as distinguished from the market value.

"Thus, the measure of damages being the difference between the face value of the certificates and the amount paid, and the former being greater than the latter, plaintiff was entitled to retain the latter and therefore was not required to offer to restore. While the testimony and exhibits in *Pacific States Savings and Loan Company* v. *Evans, Commissioner,* referred to in plaintiff's proof of claim (this case on appeal is entitled *Pacific States Sav. & L. Co.* v. *Hise, supra* [25 Cal.2d 822]), indicate that the company was insolvent at the time of the alleged fraud and that the investment certificates were not worth their face value, the situation is no different from that in the Bank of America case, *supra,* where the court found that if at the time of the fraud all the debtor's assets had been liquidated, the $88,050.66 judgment would have brought only $29,300. Nevertheless, it was held that the measure of damages was the face value of the judgment. In our case, whether the certificates ever would be worth their face value was problematical, depending on the manner in which the company operated its affairs, and later, on the manner in which the building and loan commissioner operated them. However, if at that time, plaintiff proved the fraud, he would be entitled to a judgment for their face value. Nor would such judgment have placed him in substantially a better position than the certificate holders who kept their certificates. He would have been a creditor on a par with them. These certificates are 'a type of unsecured note or debenture' (*In re Pacific Coast Bldg.-Loan Assn.,* 15 Cal.2d 134, 141 [99 P.2d 251]), and hence the relationship between the holder and the company is that of creditor and debtor. (See *Bureau of Welfare, etc. Assn.* v. *Drapeau,* 21 Cal.App.2d 138 [68 P.2d 998].) If the company was actually insolvent, his attempt to collect the judgment would have forced the commissioner to take the company over, and he would be paid only a pro rata of

the assets together with the other creditors, including the other certificate holders. True, there would have been one difference between the judgment holder and the certificate holders. His judgment would be due and payable immediately. If the company were a going concern, the certificate holders would have to file the necessary notices to enable them to withdraw their deposits, and wait the statutory period for payment. If the company were insolvent, this delay would mean nothing as the judgment could not be paid. If the company were not insolvent, there would be sufficient funds to pay both the judgment and the deposits, so that the short period which the certificate holders would have to wait would be only a minor distinction from the position of the judgment creditor. Practically speaking, the latter would have no advantage over the former. The fact that there was a market value for the certificates at the time of the sale does not affect the measure· of damages. Particularly is this so where as alleged here defendants had fraudulently depressed that value. To hold that a building and loan company can by manipulation as charged depress the market, frighten the depositors, to whom there must necessarily be owed the duty of not misrepresenting the status of their deposits, into disposing of their certificates at the depressed market value, where, had they held on to them, they, like the others who did hold, would have received their full face value, and then for the courts to refuse to give relief because the holder had been paid that market value, would be making a mockery of justice.

''As to one of the lists of assignors plaintiff alleges that the assignments of their certificates were obtained after plaintiff had given notice of rescission concerning all the other assignors and after said notices had been ignored and impliedly refused, and that it would have been futile to give notice on behalf of the later assignors. Under the circumstances of the case, the giving of such notice would have been futile and therefore unnecessary.'' (Cal.App.) 224 P.2d 733, 743.

From the foregoing it is obvious that Counts 3 and 4 of the amended complaint allege sufficient facts to state causes of action based upon fraud and rescission and the majority opinion departs from settled principles of law in arriving at a contrary conclusion. Considering the background of this case, the result reached by the majority is indeed unfortunate since the records of this court disclose an orgy of fraudulent conduct on the part of the defendant unparalleled in the his-

tory of California as a result of which thousands of thrifty investors were mulcted out of their life savings. While justice to these certificate holders has long been delayed it is a grievous and regrettable travesty that it should now be denied. I cannot stultify my conscience as well as my concept of justice by concurring in such a result.

I would therefore reverse the judgment.

Appellant's petition for a rehearing was denied July 26, 1951. Carter, J., voted for a rehearing.